# UNITED STATES DISTRICT COURT
## NORTHEN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | No. 95 CR 508-1 |
| | ) | Hon. Harry D. Leinenweber |
| LARRY HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR REDUCTION OF SENTENCE
## BASED UPON FIRST STEP ACT

NOW COMES the Defendant, LARRY HOOVER, by and through his attorneys, JUSTIN

MOORE[1] and MONICO & SPEVACK, and respectfully requests that the Court enter an Order

to resentence Defendant based on the Formerly Incarcerated Reenter Society Transformed Safely

Transitioning Every Person Act, commonly referred to as the "First Step Act." Pub. L. No. 115-

391, 132 Stat. 5194 (2018).

Among other penalties, the Court sentenced Mr. Hoover to serve a mandatory life

sentence under the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. Modifications of

the law since that sentencing now provide that Mr. Hoover is not eligible for a mandatory life

sentence. In addition, many of the other counts upon which the Court originally sentenced Mr.

Hoover provided for penalties since made less onerous than they were at the time the Court

imposed them.

In this motion Mr. Hoover asks the Court to declare that he qualifies for resentencing

under the Fair Sentencing Act as activated through the First Step Act. Mr. Hoover then requests

---

[1] Mr. Moore is a member of the State Bar of Texas and the United States District Court for the Northern District of Texas and will be applying forthwith to appear *pro hac vice* in the Northern District of Illinois for the instant matter.

that the Court order a resentencing pursuant to recent changes in the statutory and sentencing laws since his original sentencing.

IN SUPPORT of this Motion, Mr. Hoover states as follows:

## A. Introduction

1.     Larry Hoover is presently serving a mandatory life sentence based on his conviction under 21 U.S.C. § 848 ("Continuing Criminal Enterprise," or "CCE").  He has been incarcerated on these charges since 1995, approximately 25 years.

2.     Mr. Hoover is also serving non-mandatory life sentences based on two convictions under 21 U.S.C. § 861(a)(1) (enticing or using a person under 18 years old to violate 21 U.S.C. § 846).  Those sentences run concurrent with multiple concurrent 20-year sentences for possessing and distributing cocaine powder and cocaine base (alternatively referred herein as "crack"), in violation of 21 U.S.C. § 841(a)(1).  Three of the section 841(a)(1) counts have concurrent non-mandatory life sentences. The Court also sentenced Mr. Hoover to concurrent four-year terms on multiple counts of using a communication facility to facilitate the commission of felonies, violations of 21 U.S.C. § 843(b), and a five-year term for the attempted purchase of cocaine, a violation of 21 U.S.C. § 841(a). Finally, he is serving a five-year sentence for using and carrying a firearm during and in relation to the commission of a drug trafficking crime, a violation of 18 U.S.C. § 924(c). That last sentence, unlike the previous ones that are concurrent, runs consecutively to all the others.

3.     Since the Court sentenced Mr. Hoover drug trafficking sentencing laws have undergone substantial changes, both statutorily and judicially.  Statutorily, to address the unfair disparity between sentences for powder and crack cocaine, Congress passed the Fair Sentencing Act of 2010.  The Fair Sentencing Act increased the quantity of crack cocaine required to reach

certain mandatory minimum thresholds. While the modification of crack cocaine penalties may have influenced Mr. Hoover's sentence, not being retroactive the Fair Sentencing Act did not provide Mr. Hoover an avenue for relief. That changed, however, in 2018, when Congress passed the First Step Act. The First Step Act provides for a possible reduced sentence where the defendant was sentenced under a statute which had penalties modified by the Fair Sentencing Act where the defendant had been sentenced prior to the passage of the Fair Sentencing Act and has not previously received its benefits.

4.      Other changes have been judicial. In *Alleyne v. United States,* 133 S.Ct. 2151, 2158 (2013), the United States Supreme Court held that factors increasing a defendant's minimum sentencing exposure must be decided beyond a reasonable doubt by the jury. Like the Fair Sentencing Act at the time, *Alleyne* was not retroactive. Once again, the First Step Act has modified that view. In enabling courts to conduct re-sentencings for defendants sentenced prior to the passage of the Fair Sentencing Act, it also enables the re-sentencing court to apply *Alleyne*'s holding that the Government must prove matters such as the quantity of drugs to the jury beyond a reasonable doubt. *See, e.g., United States v. Wright,* 2019 U.S.Dist. LEXIS 115798, 2019 WL 3046096 at \*6 (after finding the First Step Act applicable, court must impose a new sentence based on the law at the time of new sentencing).

5.      These changes implemented by the First Step Act qualify Mr. Hoover for a fresh sentencing hearing. He would not be subject to the mandatory life sentence under the CCE charge today, and several of the other sentences require reconsideration as well. Ultimately, whether the Court reduces Mr. Hoover's sentence is discretionary, *see* First Step Act, § 404(c), but he has been incarcerated on these charges for 25 years and is approaching age 70.[2]

---

[2] The Court's decision in the instant case will obviously not affect any sentence Mr. Hoover may be serving on a prior state court sentence.

**B. Defendant's Statutory Penalties Were Modified by the
Subsequent Passage of the Fair Sentencing Act,
<u>Making Him Eligible for a Reduced Sentence Under the First Step Act</u>**

6.     The First Step Act authorizes courts to impose a reduced sentence for anyone (1) convicted of a statute, for which the penalties were modified by sections 2 or 3 of the Fair Sentencing Act of 2010, Pub.L.No. 111-220, 124 Stat. 2372 (2010) ("FSA"); (2) where he committed the offense before August 3, 2010; (3) and where he did not already receive a reduction under the FSA or the First Step Act. *See* First Step Act, § 404, 312 Stat. 5194, 522.  It applies where a court sentenced a defendant previously for a "covered offense," meaning "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." First Step Act, § 404(a). *See, e.g., United States v. Cross,* 2019 U.S.Dist. LEXIS 132274 (N.D.Il.), at *8. If so, the court may reduce that sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 existed at the time the sentence was imposed. First Step Act, § 404(b).  Mr. Hoover was convicted and sentenced for offenses committed before August 2010 based on 21 U.S.C. § 841, a Federal criminal statute whose statutory penalties were modified by sections 2 or 3 of the Fair Sentencing Act, so the First Step Act qualifies him for resentencing.

7.     Specifically, prior to the Fair Sentencing Act, a person responsible for 5 grams or more of cocaine base was subject to a mandatory minimum sentence of 5 years and a maximum sentence of 40 years. 21 U.S.C. § 841(b)(1)(B)(iii) (1996).  Section 2 of the Fair Sentencing Act struck the words "5 grams" and replaced them with "28 grams."  And prior to the Fair Sentencing Act, a person responsible for 50 grams or more of cocaine base was subject to a mandatory minimum sentence of 10 years and a maximum sentence of life. 21 U.S.C. § 841(b)(1)(A)(iii) (1996).  Section 2 of the Fair Sentencing Act struck the words "50 grams" and

replaced them with "280 grams. Finally, section 3 of the Fair Sentencing Act eliminated the statutory mandatory minimum sentence for simple possession of crack cocaine. Thus, sections 2 and 3 of the Fair Sentencing Act modified the cocaine base (crack) sentences 1) in 21 U.S.C. § 841(b)(1)(A)(iii), by increasing from 50 grams to 280 grams the quantity of cocaine base required to impose a sentence of not less than 10 years or more than life; 2) in 21 U.S.C. § 841(b)(1)(B)(iii), by increasing from 5 grams to 28 grams the quantity of cocaine base required to impose a sentence of not less than five years or more than 40 years; and 3) by eliminating the mandatory minimum sentence for simple possession of cocaine base and providing for a maximum term of 20 years. 21 U.S.C. § 841(b)(1)(C). Sections 2 and 3 of the Fair Sentencing Act therefore clearly modified the penalties in 21 U.S.C. § 841 and rendered that statute a "covered offense" under the terms of the First Step Act.

8.     This Court recognized as much in the companion case of *United States v. Johnny Jackson,* No. 95 CR 508-6 (R. 1225 at 3303, pg. 5), holding that sections 2 and 3 of the Fair Sentencing Act modified the statutory penalties of 21 U.S.C. §§ 841(a)(1) and 846 and that therefore Jackson's offenses were "covered," making him eligible for First Step Act relief. Other courts agree. *See, e.g., United States v. Jones,* 2019 U.S.Dist. LEXIS 174310 (N.D.Il.) (Judge Ellis), at*9 ("Section 2 of the First Step Act modified the statutory penalties for the statute that Jones violated, and he committed the violation before August 3, 2010. Therefore, Jones' violation is a 'covered offense' under the First Step Act."); *United States v. Moore,* 2019 U.S.Dist. LEXIS 142792 (D.Neb.), at *6 ("[T]he only fair reading of § 404(a) is that a defendant committed a 'covered offense' when the defendant was convicted of violating a statute, and the statutory penalties for violating that statute were subsequently modified by the Fair Sentencing Act.").

5

9. That Mr. Hoover's controlled substance violations include both cocaine powder along with cocaine base do not change the fact that the statute upon which he was charged and convicted was one whose penalties were altered by the Fair Sentencing Act. Just recently the Eighth Circuit decided *United States v. McDonald,* 2019 U.S. App. LEXIS 36661 (Dec. 11, 2019). A jury convicted defendant for distributing 57 grams of cocaine base and 150 kilograms of cocaine powder. The District Court denied his subsequently filed motion under the First Step Act because his sentence was based on 150 kilograms of powder rather than cocaine base.

10. The Eighth Circuit reversed. Although defendant's base offense level was based on more than 150 kilograms of powder cocaine, not cocaine base, that does not change the fact that he was convicted for distributing cocaine base as well. "The First Step Act applies to offenses, not conduct, *see* First Step Act § 404(a), and it is McDonald's statute of conviction that determines his eligibility for relief, *see, e.g., United States v. Beamus,* 2019 U.S. App. LEXIS 34650, 2019 WL 6207955, at *3 (6th Cir. Nov. 21, 2019); *United States v. Wirsing,* No. 19-6381, 2019 U.S. App. LEXIS 34498, 2019 wl 6139017, at *9 (4th Cir. Nov. 20, 2019)." *McDonald,* 2019 U.S. App. LEXIS, at *5.

11. In other words, the language of Fair Sentencing Act is structured so that the new penalties modify "the Federal criminal statute," not the specific penalties upon which the defendant was sentenced. *See, e.g., United States v. Hawkins,* 2019 U.S. Dist. LEXIS 122650 (D.N.J.), at *28-29 (The fact is "the Fair Sentencing Act *did* change the statutory penalties of 21 U.S.C. § 841(b)(1)(A) [and] does not restrict the 'covered' 'Federal criminal statute[s]' by suggesting 'as applied.'") (emphasis by the Court) *and citing cases*. "The thrust of [section 404] of the First Step Act is sentence reform; eligibility springs from a 'covered offense,' not from being a covered offender. … The defendants' offense conduct is relevant to whether their

sentences will be reduced, as opposed to whether they may move for a sentence reduction."

*Hawkins,* at *28-29. *And see United States v. White,* 2019 U.S.Dist. LEXIS 131687 (D.D.C.), at

*40 ("The 'covered offense' definition looks directly to *whether the statute of conviction* was

modified by FSA's section 2 or 3, not a drug quantity finding, making the eligibility

determination distinct from any subsequent determinations of whether a reduction sentence is

available to a defendant section 404(b) and whether, if available, a sentencing reduction should

be granted as a matter of discretion.") (emphasis added). *See also United States v. Rose,* 379

F.Supp.3d 223 (S.D.N.Y. 2019).

12.     Thus, a "covered offense" is one in which the Fair Sentencing Act modified the

statute's offense penalties generally, not whether the amended penalties trace back directly to a

defendant's specified statutory offense.  As one Court explained:

> Under the plain language of the Act, whether an offense is a "covered offense' is
> determined by examining the statute that the defendant violated.  If that statute is one for
> which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act,
> it is a 'covered offense.' *United States v. Davis,* [2019 U.S. Dist. LEXIS 36348] ….
> Quantity is simply not part of the statutory test for eligibility under the First Step Act.
> Eligibility turns entirely on the categorical nature of the prior conviction.  All other
> issues, including the proper quantity determination, are a part of the reviewing court's
> discretionary call on whether to modify an eligible defendant's sentence.

*United States v. Boulding,* 379 F.Supp.3d 646, 652 (W.D.Mich. 2019).

13.     Meanwhile, the mandatory life sentence the Court imposed on the CCE count was

dependent upon penalty-modified section 841, and thus was also a statute whose penalties were

modified by the First Step Act.  The CCE statute enhances the statutory penalty to life

imprisonment where the jury makes a finding that the defendant was a principal leader of the

enterprise and either 1) the violation involved at least 300 times the quantity of controlled

substances in 21 U.S.C. § 841(b)(1)(B), or 2) the enterprise received $10 million in gross

receipts in any twelve-month period. *See* 21 U.S.C. § 848(b)(2)(A), (B).  Thus, the Fair

Sentencing Act modified the CCE by revising the multiplicands subject to the 300 times multiplier, rendering section 848 "a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  Similarly, the life sentences Mr. Hoover received for violating section 861(a)(1) for enticing or using persons under the age of 18 to conduct drug trafficking depended upon the quantity of crack or powder distributed and were also statutes modified by the Fair Sentencing Act.

14.     Therefore, the statutes under which the Court imposed both the CCE mandatory life sentence and the substantive drug count sentences were all modified by the First Step Act. Mr. Hoover thus qualifies and is eligible for a reduced sentence pursuant to the Act.

### C. Applying the First Step Act Significantly Affects Defendant's Mandatory Life Sentence for Violating the CCE Statute

15.     The government charged, and ultimately convicted Mr. Hoover for violating 21 U.S.C. § 848(a) of the Continuing Criminal Enterprise statute.  A violation of section 848(a) exposes a defendant to a mandatory minimum sentence of 20 years and a maximum sentence of life imprisonment.  The Court sentenced Mr. Hoover, however, under 21 U.S.C. § 848(b), which raises the mandatory minimum to life in prison if the defendant was a principal administrator of the enterprise and (A) the violation involved at least 300 times the quantity of a substance described in 21 USCS § 841(b)(1)(B), *see* 21 U.S.C. § 848(b)(2)(A); or (B) the enterprise received $10 million dollars in gross receipts during any twelve-month period of its existence for the manufacture, importation, or distribution of a substance described in section 401(b)(1)(B). *See* 21 U.S.C. § 848(b)(2)(B).

16.     Because either of the above findings increased Mr. Hoover's minimum sentencing exposure from twenty years to life, they had to be determined by the jury beyond a reasonable doubt.  A review of the jury instructions indicates that neither possibility had been presented to,

and ultimately decided by, the jury. Instead, the jury was instructed, consistent with then-prevailing law, that:

> The government does not have to prove that a defendant distributed, or that the charged conspiracy actually involved, the amount of controlled substances alleged in the indictment. As to the charge in Count One [the conspiracy count], however, the government must prove that the conspiracy involved a measurable amount of controlled substances. As to the charges in Counts 5 through 9, 11 through 18, and 38 and 39, that allege distributions of controlled of controlled substances or possession or attempted possession of controlled substances with the intent to distribute, the government must prove that the defendant whom you are considering distributed a measurable amount of cocaine.

17. To reach the level invoking the requirement for a mandatory life sentence based on the amount of controlled substances the jury would have had to find Mr. Hoover was involved with 300 times the quantity of drugs described in 21 U.S.C. § 841(b)(1)(B). The quantities described in section 841(b)(1)(B) were at the time 5 grams of cocaine base (increased under the Fair Sentencing Act to 28 grams) and 500 grams of cocaine powder. The instruction only required the jury to find a "measurable amount" of controlled substances. A finding of a "measurable amount" on its face is less than the lowest quantities described in section 841(b)(1)(B) and therefore cannot possibly elevate a defendant's exposure into the mandatory life sentence level.

18. In *United States v. Torres,* 901 F.2d 205 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus,* 628 F.3d 36, 41 (2d Cir. 2010), the Second Circuit vacated defendants' convictions because the trial court failed to instruct the jury that in order to find the defendants guilty of section 848(b) it had to determine that they functioned as principal administrators, organizers, or leaders after the statute became effective. *See United States v. Loera*, 2018 U.S.Dist. LEXIS 153091, at *6. "In discussing how the jury should have been instructed, the Second Circuit stated that 'section 848(b) requires the jury to find, beyond a

reasonable doubt, elements in addition to those stated in section 848(a), [and therefore] section 848(b) resulted in a new offense rather than sentence enhancement.'" *Loera,* at *6, *quoting Torres,* 901 F.2d at 240.

19.     The instant case effectively opens the door left ajar in the companion case of *United States v. Howard,* 2017 U.S. Dist. LEXIS 61117.  In that case one of Mr. Hoover's codefendants, Andrew Howard, had moved for a sentence reduction based on Guideline Amendment 782, which served to lower the sentencing guideline ranges for both cocaine base and powder since the date of his sentencing.  Because the Court had independently found the amounts of cocaine base and powder exceeded the reduced quantities even under the lowered guidelines, the Court had no room to grant the defendant relief on that ground.  Turning to the CCE charge, the Court noted that a jury had convicted Howard under 21 U.S.C. § 848(a), but, like Mr. Hoover, had received from the Court a mandatory life sentence for violating 21 U.S.C. § 848(b).  The Court noted further that under *Alleyne v. United States,* 133 S.Ct. 2151 (2013), facts that increase a defendant's penalty for a crime are elements that must be submitted to the jury and proved beyond a reasonable doubt. *Howard,* 2017 U.S. Dist. LEXIS, at *11-12.  And that "*Alleyne* appears pertinent for Howard because his mandatory life sentence for the CCE violation rests not just on finding made by a jury, but also made by this Court."  Specifically,

> A jury found Howard guilty of violating 21 U.S.C. 848(a); the Court made additional findings as to Howard's role and the size of the enterprise to sentence him under 21 U.S.C. § 848(b). Moreover, these additional facts increased his punishment.  The sentencing range under § 848(a) is 20 years to life; the sentence under § 848(b) is mandatory life.  Section 848(b) thus alters § 848's sentencing range by increasing the mandatory minimum (20 years) and making it coincide with the statutory maximum (life).  Yet despite the additional findings have the effect of increasing penalty for Howard's crime, they were not submitted to a jury.  The situation thus seems to contravene *Alleyne*.

*Howard,* 2017 U.S. Dist. LEXIS, at *11-12.

20.     Fatal to Howard's claim, however, was that *Alleyne* was not retroactive. *Id.*, at \*12.  But that has changed since the passage of the First Step Act.  Although the Seventh Circuit had held *Alleyne* non-retroactive on collateral review, *see Crayton v. United States,* 799 F.3d 623, 624 (7th Cir. 2015), that holding does not bear on the resentencing required under the First Step Act. *See, e.g., United States v. Springs,* 2019 U.S. Dist. LEXIS 122459 (W.D.N.C.), at \*7, *and cases cited therein*. *See also* this Court's decision in *United States v. Mansoori,* 2019 U.S. Dist. LEXIS 211803, at \*18; *United States v. Williams,* 2019 U.S. Dist. LEXIS 144080 (Judge Chang), at \*17.  26.

21.     In *United States v. Hardnett,* 2019 U.S.Dist. LEXIS 185067 (E.D.Va.), the Judge directly addressed the question whether the non-retroactivity of *Alleyne* precluded a defendant from taking advantage of the First Step Act.  The Court distinguished habeas cases, governed by the Supreme Court's decision in *Teague v. Lane,* 489 U.S. 288 (1989), from cases that arise under the First Step Act or 18 U.S.C. § 3582(c)(1)(B), the latter for which permits courts to "modify a term of imprisonment to the extent otherwise permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  Citing *Wall v. Kholi,* 562 U.S. 545 (2011), the Court noted that nonretroactivity principles do not necessarily apply in sentence reductions and that

> Other courts have reached similar conclusions concerning the current federal sentencing landscape and sentencing under the First Step Act. *See, e.g., United States v. Smith,* 379 F.Supp.3d 543, 546 (W.D.Va. 2019) ("although *Apprendi* and *Alleyne* are not retroactively applicable on collateral review, this court joins other courts in finding that their holdings are applicable in the context of the First Step Act"; *United States v. Jones,* No. 1:08CR40, 2019 U.S.Dist. LEXIS 117206, 2019 WL 3074075, at \*3 (W.D.Va., July 15, 2019) (accord).  For example, in *Wright,* the Court explained that, after finding the First Step Act applicable, it must impose a new sentence based on the law at the time of sentencing. *Wright,* 2019 U.S.Dist. LEXIS 115798, 2019 WL 3046096 at \*6 (citing *United States v. Schaefer,* 120 F.3d 505, 507 (4th Cir. 1997).

*Hardnett,* at \*31-\*32.  Accordingly, the *Hardnett* Court joined the chorus of cases recognizing that upon resentencing under the First Step Act any fact that increases the penalty for a crime

beyond the prescribed statutory maximum and any fact that increases a mandatory minimum must be submitted to a jury and proved beyond a reasonable doubt. *See also Wright,* at *6.

22.     Accordingly, unlike motions brought under 18 U.S.C. § 3582(c)(2) where the Court would not be allowed to ignore its prior relevant conduct and statutory range findings, the resentencing under the First Step Act and Fair Sentencing Act is plenary, and takes into consideration not only the statutory amendments but intervening judicial construction as well. Here, the jury made no findings with respect to the facts under section 848(b) that expose a defendant convicted of CCE to a minimum mandatory sentence of life, and therefore Mr. Hoover is eligible for a reduced sentence.

### D. Because the Jury Did Not Make a Finding Regarding the Quantity Of Controlled Substances Chargeable to Defendant, the Court Must Use the Minimum Quantity for the Offense, and that Quantity Does Not Reach the Level Necesssary To Impose a Life Sentence Under the CCE Statute

23.     To sentence Mr. Hoover the Court used quantities determined by the Probation Office and its own view of the evidence in order to find Mr. Hoover responsible for 1.5 kilograms of cocaine base and 150 kilograms of cocaine powder.  Multiplied by 300 put Mr. Hoover into the category of a mandatory life sentence under the CCE.  We now know that Probation's and the Court's adoption of quantities was improper, because since the Court sentenced Mr. Hoover the Supreme Court has held that drug quantities used to elevate a defendant's sentence must be found by the jury beyond a reasonable doubt. *Alleyne v. United States,* 133 S.Ct. 2151, 2158 (2013); *United States v. Jones,* 763 F.3d 777, 817 (7th Cir. 2014). And because the First Step Act entitles qualified defendants to a new sentencing (as opposed to a possible reduction of sentence), these more recent changes to sentencing law apply to Mr. Hoover now as well.

24.     Because the jury did not make any specific findings, it can only be surmised the jurors acted consistent with the instruction and found that Mr. Hoover distributed no more than "a measurable amount" of cocaine. The maximum sentence for distributing a measurable quantity of cocaine powder or cocaine base is 20 years. 21 U.S.C.§ 841(b)(1)(C). *See also United States v. Brough,* 243 F.3d 1078, 1079-80 (7th Cir. 2001) ("… 20 years is the maximum under § 841(b)(1)(C) for unlawfully distributing any detectable quantity of any Schedule I or II controlled substance."). Mr. Hoover was also convicted under 21 U.S.C. § 848(a), a Continuing Criminal Enterprise, which provides for a sentence of not less than 20 years and may be up to life imprisonment. Because there was no finding by the jury as to the quantity of cocaine powder or cocaine base, he simply cannot qualify under section 848(b), which *requires* mandatory life imprisonment if the section 841(b)(1)(C) violation involved at least 300 times the quantity described in section 841(b)(1)(B), *i.e.,* either 500 grams or more of cocaine or 28 grams or more of cocaine base. *See* 841(b)(1)(B)(ii), (iii). There is nothing to multiply 300 times against, and because "measurable amounts" identified in (b)(1)(C) are by necessity less than the minimal quantities of 28 grams of base and 500 grams of powder (multiplied by 300) identified in (b)(1)(B) needed to meet the minimal requirement for a mandatory life sentence under 848, the mandatory life sentence provision of the CCE statute cannot apply.

25.     Even using the largest minimal quantity of controlled substances identified in section 841(b)(1)(B), that figure does not reach the level needed to expose Mr. Hoover to a mandatory life sentence. The minimal quantity in section (b)(1)(B) is 28 grams, and when multiplied by 300 equals 8400 grams. Mr. Hoover's 260 grams of crack cocaine does not reach that level. With respect to the cocaine powder, 500 grams of powder times 300 results in 150,000 grams of powder (150 kilograms) as the minimum quantity of powder cocaine needed to

expose Mr. Hoover to a mandatory life sentence. The total quantity of cocaine powder charges against Mr. Hoover in the Second Superseding Indictment is just under 54 kilograms. Thus, Mr. Hoover is not eligible for a life mandatory life sentence under the CCE statute.[3]

### D. The First Step Act Applies to the Other Counts Where the Court Sentenced Defendant Based on the Quantities of Controlled Substances

26.     The Court also sentenced Mr. Hoover to non-mandatory sentences of life in prison on several counts based on the quantity of controlled substances possessed with intent to distribute. These counts were Count 12 (possession with intent to distribute 50 kilograms of cocaine), Count 17 (possession with intent to distribute 123.1 grams of cocaine base, *i.e.,* base), and Count 39 (possession with intent to distribute 137.2 grams of cocaine base). The Court also imposed non-mandatory life sentences on Counts 3 and 4 (employing or enticing a person under 18 years of age to participate in a controlled substance conspiracy). The First Step Act requires a new sentencing on these counts as well.

27.     With respect to the possession with intent to distribute counts, the jury made no findings regarding the quantity of controlled substances. As argued above, that means the Court can only apply the lowest penalty in the statute, which would be 21 U.S.C. § 841(b)(2)(C), and that provision attaches no mandatory minimum and a maximum of 20 years. With respect to the crack cocaine, none of the individual counts approach anything close to the 280 grams necessary to make a life sentence an option. *See* 21 U.S.C. § 841(b)(1)(A)(iii) *and* (b)(1)(B)(iii). Even if

---

[3] Given the age of the case not all documents are readily available to Defendant. It appears with respect to the alternative requirement for conviction under the CCE statute – that the enterprise grossed $10 million over a 12-month period – was also not passed upon by the jury. The Government instruction on CCE, which he assumes was given, asked the jury merely to determine whether "the defendant you are considering obtained substantial income or resources from the offenses." Gov. Inst. 29. Defendant found no additional instruction with respect to income or resources. Available transcripts from co-defendant sentencings indicate the gross income, like the quantity of controlled substances, was also determined by the Court.

totaled altogether the quantity of crack cocaine alleged in the Superseding Indictment comes to less than the 280 grams so the maximum sentence is not more than 40 years.

28.     The counts alleging possession with intent to distribute are roughly similar.  The lowest penalty described in the statute carries no minimum sentence and a statutory maximum sentence of 20 years. *See* 21 U.S.C. § 841(b)(2)(C).  With respect to the individual counts, only Count 12 alleges a quantity (50 kilograms) that brings a life sentence into play (5 kilograms), but the maximum sentence is not mandatory.

### E.  Resentencing Under Guidelines

29.     The following is a cursory look at some of the guidelines that might be implicated upon resentencing.  Should the Court agree that Mr. Hoover qualifies for resentencing as a result of the First Step Act, Defendant reserves the right to recalculate those guidelines in accordance with the applicable law.  That will also require a fresh look at the Criminal History Category and any other amendments to the guidelines and law that has intervened since the original sentencing.

### 1.  Possible Applicable Guidelines

30.     In *Brown v. United States,* 2016 U.S.Dist. LEXIS 155363 (N.D.Il.) (Judge Dow), a habeas case, the jury was specifically asked to check off whether the cocaine alleged in the offense  was a) 5 kilograms or more; b) more than 500 grams and less than 5 kilograms; or c) a measurable amount, but less than 500 grams.  The jury found 5 kilograms or more.  The statutory minimum for 5 kilograms or more is 120 months and the statutory maximum is life.  The Court took into consideration statements defendant made indicating he dealt in 68 kilograms and which came to a guideline level 36.  Defendant had a criminal history category II which yielded an advisory sentencing guideline range of 210 to 262 months.  The Judge sentenced hm to a below

guideline sentence of 175 months. Defendant argued error because the quantity of drugs had been decided by the Judge by a preponderance of the evidence and not by the jury beyond a reasonable doubt.

31.     The Court held that the jury had decided defendant handled 5 kilograms or more of cocaine, which set defendant's sentencing range to 120 months to life, and because defendant's sentence fell within that range (175 months) there was nothing to correct. Thus, the sentence fell within the parameters of *Alleyne* and the judge had the discretion to make findings as to where in those parameters the defendant's conduct fell.

32.     Larry Hoover's case is different. In Mr. Hoover's case the jury did not make any findings with respect to the quantity of cocaine base Mr. Hoover handled in any of the controlled substances counts. Using a preponderance of the evidence standard the Probation Office and the Court estimated Mr. Hoover trafficked in 1.5 kilograms. The base offense level for 1.5 kilograms is a Level 32, which for a Category II defendant coordinates to a Guideline Range between 135 and 168 months. But because the jury did not find a quantity of cocaine powder beyond a reasonable doubt, Mr. Hoover's offense fell into 21 U.S.C. § 841(b)(1)(C), which applies when the quantity of cocaine powder is a measurable amount but less than 500 grams. The maximum sentence for a person convicted under section 841(b)(1)(C) is no more than 20 years. Thus, the Guideline Range exceeds the statutory maximum, the statutory maximum controls, and the Court cannot sentence Mr. Hoover to more than 20 years on the possession and distribution counts relating to cocaine base.

33.     The analysis with respect to the cocaine powder is the same. The jury did not make any findings with respect to the quantity of cocaine powder Mr. Hoover handled in any of the controlled substances' counts. The Probation Office and then the Court estimated that Mr.

Hoover was responsible for over 150 kilograms. The base offense level for 150 kilograms of cocaine powder is a Level 38, which for a Category II defendant coordinates to a Guideline Range between 262 and 327 months. But because the jury did not find a quantity of cocaine powder beyond a reasonable doubt, Mr. Hoover's offense falls into 21 U.S.C. § 841(b)(1)(C), which applies when the quantity of cocaine powder is a measurable amount but less than 500 grams. The maximum sentence for a person convicted under section 841(b)(1)(C) is no more than 20 years. Thus, the Guideline Range exceeds the statutory maximum, the statutory maximum controls, and the Court cannot sentence Mr. Hoover to more than 20 years on the possession and distribution counts relating to cocaine powder.

34. Turning to the CCE count, the CCE Guideline calculates the sentencing Guideline Level by adding four (4) points to the offense level from section 2D1.1 applicable to the underlying offense. U.S.S.G. § 2D1.5(a)(1). The Probation Office and the Court estimated the amount of cocaine powder as 150 kilograms, which results in a Guideline Offense Level for the cocaine powder offenses of 42 (38 plus 4). The Probation Office and the Court estimated the amount of cocaine base as 1.5 kilograms, which results in a Guideline Offense Level for the cocaine base offenses of 36 (32 plus 4). The Guideline Range for a Category II defendant in Level 42 is 360 months to life; the Guideline Range for a Category II defendant in Level 36 is 210 to 262 months. Because the jury did not make any findings with respect to the quantity of cocaine powder or cocaine base, Mr. Hoover falls into the CCE statutory provision that provides for a sentence between 20 years and life, but neither the statute nor the sentencing guidelines *mandate* a life sentence.

## 2.  The New Sentence

35.     Mr. Hoover received a life sentence on Count 12 for distributing 50 kilograms of powder cocaine, Count 17 for distributing 123.1 grams of crack cocaine and Count 39 for distributing 137.2 grams of crack cocaine.  The jury made no findings as to those amounts, so the Court has to apply the lowest quantity, which would be measurable amounts of crack and powder.  Distributing measurable amounts of crack and powder have no mandatory minimums and statutory maximums of 20 years. *See* 21 U.S.C. § 841(b)(1)(C).  And even if the quantities charged in the Superseding Indictment were met, they still would not qualify for life imprisonment.

36.     Mr. Hoover also received life sentences on Counts 3 and 4 for enticing persons under 18 years of age for participating in the alleged drug trafficking conspiracy.  The drug trafficking conspiracy incorporated the controlled substance distribution counts, so once again the quantities were not decided by the jury beyond a reasonable doubt and cannot be used to enhance his sentence. A person who violates section 846 is subject to twice the maximum punishment for the offense, which does not stretch to life imprisonment.

37.     Though Mr. Hoover received 20-year sentences for narcotics trafficking offenses, at the time of sentencing the Court was of the impression that those violations contained mandatory minimum sentences based upon findings by the Court.  In fact, without a jury finding they contained no mandatory minimums.

38.     And though Count 2, the CCE count, contains a mandatory minimum sentence of 20 years and may be up to life, a life sentence is not mandatory because the jury did not make any findings required by section 848(b).

39.     The above principles and others are preliminary and will need to be explored when resentencing Mr. Hoover under the dictates of the First Step and Fair Sentencing Acts, and the intervening Court decisions.  Accordingly, Defendant requests the Court set the matter down for a new hearing and arguments with respect an appropriate sentence.

## **CONCLUSION**

Accordingly, Mr. Hoover respectfully requests that the Court Order issue an Order that the Defendant qualifies for a possible reduced sentence pursuant to the First Step Act and then set this matter down for a new sentencing.

Respectfully submitted,
LARRY HOOVER


By:     /s/  Barry A. Spevack
One of his attorneys

Michael D. Monico
mm@monicolaw.com
Barry A. Spevack
bspevack@monicolaw.com
MONICO & SPEVACK
20 West Jackson Blvd.
Suite 1315
Chicago, IL  60604
312-782-8500

Justin A. Moore[4]
justin@moorejustice.net
THE LAW OFFICE OF JUSTIN A. MOORE PLLC
1801 North Hampton Road
Suite 333
DeSoto, TX 75115
214-794-1069

Attorneys for Defendant

---

[4] Mr. Moore is a member of the State Bar of Texas and the United States District Court for the Northern District of Texas and will be applying forthwith to appear *pro hac vice* in the Northern District of Illinois for the instant matter.