# Exhibit B-1

U.S. Department of Justice

Federal Bureau of Prisons

**Incident Report**

| 1. NAME OF INSTITUTION |
|---|
| MCC Chicago |

### PART I – INCIDENT REPORT

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| Hoover, Larry | 86063-024 | 5/06/1996 | 10:10AM |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| Unit 21, Section A | Unassigned | Hold Over, Unit 21 |

| 9. INCIDENT | 10. CODE |
|---|---|
| ~~Refusing the order of any staff~~ Using any equipment which is not specifically authorized | ~~307~~ 318 |

| 11. DESCRIPTION OF INCIDENT (Date: 5/06/96 Time: 10:10AM Staff became aware of incident) |
|---|
| On May 6, 1996, while conducting a routine search on Unit 21, the living area assigned to inmate Hoover, Larry 86063-024 was searched. Inmate Hoover had property stored in the locker adjacent to his bunk, A-4. Inmate Hoover also admitted to this writer that the food/commissary items located in the locker across from the end of his bunk were also his, stating that he a receipt for them. I advised inmate Hoover to relocate the commissary items to the proper storage area, that being his locker. After departing the unit, Officer Hilde called and advised me that Hoover had stated to her that he was not moving them, and that we could confiscate them. I went back to Unit 21 and told Hoover to move the items. Inmate Hoover told me that he was not moving them. The items were confiscated and turned over to the lieutenant's office. Inmate Hoover was not authorized the use of the second locker. |

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| *[signature]* | 5/6/1996  2:00PM | R. Brawley, SIS |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| *L. Green [signature]* | 5-6-96 | 6:15PM |

### PART II – COMMITTEE ACTION

**17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT**

Inmate Hoover stated the report was half true. He Admitted that he had a Second locker But NO time did he refuse to removed the items from his locker. He Stated that officer Hilde Removed the items From the Locker.

**18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:**
_____ COMMITTED THE FOLLOWING PROHIBITED ACT.

_____ DID NOT COMMIT A PROHIBITED ACT.

**B.** _____ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

**C.** _X_ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS.

**19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION**

BASE ON INMATES OWN ADMISSION.

**20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)**

30 DAYS LOSS OF COMMISSARY BEGINNING 5/7/1996.

**21. DATE AND TIME OF ACTION** 5/7/96 5:40 pm (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

| Jerry Walker / *[signature]* | *[signature]* E. Stancy / Edward J. Stevens | |
|---|---|---|
| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |

Case: 1:95-cr-00508 Document #: 1258-2 Filed: 05/01/20 Page 3 of 40 PageID #:2670

| PART III – INVESTIGATION | 22. DATE AND TIME INVESTIGATION BEGAN |
|---|---|
| | 5-6-96   6:15pm |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY   **I.E. Freeman   LT**   AT (DATE/TIME) **5-6-96   6:15pm**

24. INMATE STATEMENT AND ATTITUDE

Inmate Hoover #86063-024 said the report was false as written, Hoover further stated he told Lt. Brawley the commissary items belong to him.  Hoover said Lt. Brawley told him to move the items, inmate Hoover said he did not have place to move the items.  Inmate Hoover said he went to go and use the telephone, officer Hilde told him Lt. Brawley said the commissary items had to moved by 12 noon or have them confiscated and mailed home.  Inmate Hoover said the items and can be confiscated, Hoover said officer Hilde confiscated all items in a plastic bag.  Hoover said he was not given a direct order, he was given a choice concerning the commissary items.  Hoover said he has had the 2nd locker for a while most inmates do   Hoover displayed a fair attitude.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

No other witness requested.

Photo of items (commissary) confiscated

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

Based on the report as written I find the report justified.

27. ACTION TAKEN

Refer to UDC

DATE AND TIME INVESTIGATION COMPLETED;   **5-6-96   6:30pm**

PRINTED NAME/SIGNATURE OF INVESTIGATOR:   **I.E. Freeman**
PRINTED NAME

| | |
|---|---|
| SIGNATURE | **Lieutenant**   TITLE |

# Exhibit B-2

**U.S. Department of Justice**

Federal Bureau of Prisons

**Incident Report**

7/2/2 5Z

| 1. NAME OF INSTITUTION |
|---|
| MCC Chicago |

**PART I – INCIDENT REPORT**

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| Hoover, Larry | 86063-024 | 7/23/76 16 | 1629 |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| Social Phone "A" Section | UNASSGN | # 21 |

| 9. INCIDENT | 10. CODE |
|---|---|
| Unauthorize Use of the Telephone | 406 |

**11. DESCRIPTION OF INCIDENT** (Date: 7/23/96 Time: 1629 Staff became aware of incident)

ON ABove date and Time This Officer while monitoring the Telephone Lines in the Monitors Office Heard Inmate Hoover # 86063-024 Talking on the Phone to unknown Male. During conversation with Male a 3-way call was made Inmate spoke to another unknown Male Had a short conversation and Returned to his Original Conversation with Male.

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| *[signature]* | 7/23/96 1708 | J. Redd/PO  So.S |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
| *[signature]* | 7-23-96 | 8:30 PM |

**PART II – COMMITTEE ACTION**

**17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT**

Inmate Hoover Stated that the report was true As written.

**18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:**

X COMMITTED THE FOLLOWING PROHIBITED ACT.

_____ DID NOT COMMIT A PROHIBITED ACT.

B. _____ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

C. _____ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS.

**19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION**

Base on inmate owns Admission and Officer Report.

**20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)**

(7) Days Loss of Commissary

**21. DATE AND TIME OF ACTION** 7/25/96 1220P (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

| Early Aker | Amy Walk | E. Stancy / Edward Flinn |
|---|---|---|
| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |

Original – Central File Record   Blue – To Inmate after UDC Action
Yellow – DHO   Pink – To Inmate within 24 hours of Part I preparation

Previous editions not usable

BP–288(52)
JANUARY 1988

## PART III – INVESTIGATION

| 22. DATE AND TIME INVESTI-GATION BEGAN |
| --- |
| **7/23/96;8:32PM** |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY **Lt. J. R. Oszust** AT (DATE/TIME) **7/23/96;8:32PM**

24. INMATE STATEMENT AND ATTITUDE

Inmate Hoover was afforded the opportunity to respond to this report. At this time he elect-
ed not to comment about the report. Consequently, preferring to remain silent by his vol-
untary action. Inmates attitude was poor.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

Inmate did not state nor request witnesses or provide additional confirmation that would
refute the report as written or the charge as stated.

See attached monitoring report.

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

Based on the description contained within block eleven of the report and inmate Hoover's
elective action to remain silent. I find the report to be true and factual. Thus leaving
this investigator to only conclude that the prohibitive act occurred as stated in the
report.

27. ACTION TAKEN

Inmate Hoover to remain in general population pending further action. Referred to UDC.

DATE AND TIME INVESTIGATION COMPLETED; **7/23/96;8:34PM**

PRINTED NAME/SIGNATURE OF INVESTIGATOR:

**J. R. Oszust**
PRINTED NAME

SIGNATURE

**Lieutenant**
TITLE

# Exhibit B-3

U.S. Department of Justice
Federal Bureau of Prisons

Discipline Hearing Officer Report (DHO)
Incident Report Number: 535147

USP Terre Haute

Security Level - High

Name of Inmate: HOOVER, LARRY
Date of Incident Report: 10/28/97
Date of Incident: 10/28/97

Reg. No. 86063-024
Unit: L Unit

Code 98/99 Offenses: 299    Most Like: 203

Summary of Charges
-Conduct disruptive to security or orderly running of BOP facility
Most Like:  Threatening another person

I.  NOTICE OF CHARGE(S)

A.  Advanced written notice of charge (copy of Incident Report) was
given to inmate on 10/28/97 at 14:55 by:
B. MCKILLOP, LIEUTENANT

B.  The DHO Hearing was held on 11/06/97 at 14:15.

C.  The inmate was advised of the rights before the DHO by:
V. BOYER, CASE MANAGER on 10/29/97
and a copy of the advisement of rights form is attached.

II.  STAFF REPRESENTATIVE

A.  Inmate waived right to staff representative?  Yes.

B.  Inmate requested staff representative:
N/A.

C.  Requested staff representative declined or could not appear but inmate
was advised of option to postpone hearing to obtain another staff
representative with the result that...
N/A.

D.  A staff representative was appointed:
N/A.

III.  PRESENTATION OF EVIDENCE

A.  Inmate denies the charges.

B.  Summary of Inmate Statement:

Inmate states, "I wasn't trying to encourage a demonstration."

C.  Witnesses:
1.  The inmate requested witnesses?  No.
2.  The following people were called as witnesses and appeared:  N/A.

HOOVER          86063-024          535147          11/06/97          page 2

3. A summary of the testimony of each witness follows:  N/A.
4. The following persons requested were not called for the reasons given:  N/A.

5. Unavailable witnesses were requested to submit written statements and those statements received were considered:  N/A.

D. Documentary Evidence:  In addition to the Incident Report and Investigation, the DHO considered the following documents:

N/A.

E. Confidential Information:  No confidential information was used.

IV.  FINDINGS OF THE DHO

Act(s) was(were) committed as charged.

V.  SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS (Physical evidence, observations, written documentation, etc.):

The DHO finds that on October 28, 1997, at approximately 2:55 p.m, in L-Unit, Cell #31, you committed the prohibited act, Conduct Which Disrupts, code 299 (Most Like Threatening, code 203).  You did this by making a statement to the reporting officer that your group would not be able to recreate in the large cage.  You stated it was bullshit, that your group had caused no problems but you also stated that you would have to cause problems like setting fire and destroying property in your cell.

The DHO considered your denial of the charge saying that it wasn't a group demonstration.  The DHO considered your statement, however, gives more credibility to the statement of the reporting officer as he is merely acting in the routine performance of his duties and has nothing to gain from fabrication of the charge.

Based on greater weight of the evidence, the DHO believes that you did make the statement that your group would have to cause problems like setting fires and destroying property in your cell.  The DHO also believes that this was a threat of violence in an attempt to get staff to let you and your group use the large recreation cage. Accordingly, the DHO finds you committed the prohibited act, Conduct Which Disrupts, code 299 (Most Like Threatening, code 203).

VI.  SANCTION OR ACTION TAKEN                    Offense Severity: H
                                                 SGT Available: 0

HOOVER                86063-024          535147          11/06/97          page 3

Code #299

Disciplinary segregation:  7 days
Loss of privilege (TELEPHONE):  180 days
   (Suspend 150 days of Sanction Pending 180 Days Clear Conduct)

---

VII.  REASON FOR SANCTION OR ACTION TAKEN

Conduct which disrupts, most like threatening, seriously threatens
the security and orderly running of the institution, promotes
disrespect for staff and hampers their ability to control their area
of responsibility.  The sanctions imposed are commensurate with the
act committed.  The Loss of Telephone Privilege is imposed to
impress upon you the need to correct this type of behavior.  The DHO
believes no other sanction would produce the desired effect.

---

VIII.  APPEAL RIGHTS: Yes. The inmate has been advised of the findings, specific
evidence relied on, action and reasons for the action.  The inmate has
been advised of his right to appeal this action within 20 calendar days
following receipt of the DHO report under the Administrative Remedy
Procedure.  A copy of this report has been given to the inmate.

---

IX.  DISCIPLINE HEARING OFFICER

V. KILLION                                                      11-21-97
Printed Name              Signature                      Date

Delivered to Inmate: _____
                     Staff Signature            Date

U.S. Department of Justice
Federal Bureau of Prisons

**Incident Report**

| 1. NAME OF INSTITUTION |
|---|
| USP Terre Haute |

**PART I – INCIDENT REPORT**

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| HOOVER, Larry | 86063–024 | October 28, 1997 | 1455 |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| L-Unit Cell #31 | Unassg | L |

| 9. INCIDENT | 10. CODE |
|---|---|
| Conduct Which Disrupts (Most Like Threatening Code 203) | 299 |

11. DESCRIPTION OF INCIDENT (Date: 10-28-97 Time: 1455 Staff became aware of incident)

On October 28, 1997 at approximately 1455 hours inmate HOOVER, Larry, 86063-024 yelled to this officer, L-Unit Counselor, that he needed to speak to me. Inmate HOOVER, Larry 86063-024, stated "That he had been informed that his group would not be able to recreate in the large cage. He said this was Bullshit, that they had caused no problems, but that they would have to cause problems, like setting fires and destroying property in his cell."

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME | 13. NAME AND TITLE (Printed) |
|---|---|---|
| _Steph Vullo_ STEPHEN VULLO | 10-28-1997  1520 | STEPHEN VULLO, L-Unit Counselor |

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|
|  | 10-23-97 | 1630 |

**PART II – COMMITTEE ACTION**

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

NO comment

18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:
___ COMMITTED THE FOLLOWING PROHIBITED ACT.

___ DID NOT COMMIT A PROHIBITED ACT.

B. ✓ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING.

C. ___ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDER DAYS.

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

_Based on seriousness of the act, UDC recommend which he could Phase review, Management + Destructive act needed._

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)

_Recommend sanctions of phase + restrictions._

21. DATE AND TIME OF ACTION 10-28-97 8:00 (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

| PART III – INVESTIGATION | 22. DATE AND TIME INVESTI-GATION BEGAN |
|---|---|
| | 10-28-97, 1630 |

23. INMATE ADVISED OF RIGHT TO REMAIN SILENT: YOU ARE ADVISED OF YOUR RIGHT TO REMAIN SILENT AT ALL STAGES OF THE DISCIPLINARY PROCESS BUT ARE INFORMED THAT YOUR SILENCE MAY BE USED TO DRAW AN ADVERSE INFERENCE AGAINST YOU AT ANY STAGE OF THE INSTITUTIONAL DISCIPLINARY PROCESS. YOU ARE ALSO INFORMED THAT YOUR SILENCE ALONE MAY NOT BE USED TO SUPPORT A FINDING THAT YOU HAVE COMMITTED A PROHIBITED ACT.

THE INMATE WAS ADVISED OF THE ABOVE RIGHT BY **B.MCKILLOP,LIEUTENANT**          AT (DATE/TIME) **10-28-97, 1630**

24. INMATE STATEMENT AND ATTITUDE

INMATE HOOVER 86063-024 WAS ADVISED OF HIS RIGHTS AS STATED ABOVE AND STATED HE UNDERSTOOD THEM. INMATE HOOVER DECLINED TO MAKE STATEMENT AT THIS TIME.

INMATE HOOVER MAINTAINED A GOOD ATTITUDE THROUGHOUT THE INVESTIGATION.

25. OTHER FACTS ABOUT THE INCIDENT, STATEMENTS OF THOSE PERSONS PRESENT AT SCENE, DISPOSITION OF EVIDENCE, ETC.)

INMATE HOOVER REQUESTED NO INMATE WITNESSES AT THIS STAGE OF THE DISCIPLINARY PROCESS.

26. INVESTIGATOR'S COMMENTS AND CONCLUSIONS

BASED ON THE INFORMATION PROVIDED IN THE MAIN BODY OF THE INCIDENT REPORT, THIS INCIDENT REPORT IS ACCURATELY AND APPROPRIATELY WRITTEN.

27. ACTION TAKEN

REFER TO U.D.C.    RECOMMEND ADDED SANCTION OF 212 (ENCOURAGING A GROUP DEMONSTRATION)

DATE AND TIME INVESTIGATION COMPLETED: **10-28-97, 1700**

PRINTED NAME/SIGNATURE OF INVESTIGATOR:          **B.MCKILLOP**
                                                                                    PRINTED NAME

                    SIGNATURE                                         **LIEUTENANT**
                                                                                          TITLE

UNITED STATES GOVERNMENT

# memorandum

DATE: 10-28-1997

REPLY TO
ATTN OF: E. King, Unit Manager

SUBJECT: Inmate Hoover, Larry #86063-024

TO: File, UDC, DHO

On today's date at approximately 2:55pm I was informed by Mr. Vullo,
Correctional Counselor, that inmate Hoover #86063-024 was threatening
to set fires and destroy property in his cell if he wasn't allowed to
recreate in the big recreation area. I interviewed inmate Hoover in
my office and he related to me that he did tell Mr. Vullo that he was
going to start making trouble if he wasn't allowed to use the big yard.
I asked inmate Hoover to be more specific about what trouble he was
threatening to cause and he stated that he had been here 6 months and
if he wasn't allowed to continue using the big yard he would have to
start setting fires and tearing things up to get attention.

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114

UNITED STATES GOVERNMENT

# memorandum

**DATE:** 10-28-1997

**REPLY TO ATTN OF:** J. McCarthy (S.O.S)

**SUBJECT:** Inmate Hoover, Larry #86063-024

**TO:** File,UDC, DHO

On todays date at approximately 2:50pm this writer told inmate Hoover 86063-024 that the inmates from Chicago would have recreation in the small recreation cage tomorrow. Inmate Hoover stated he wanted to talk to the counselor. Hoover talked to counselor Vullo. Counselor Vullo then told me to escort Hoover to Unit Manager Kings office. While in Kings office Hoover admitted that he told Counselor Vullo that he would flood and set fires if he had to recreate in the small recreation cage.

OPTIONAL FORM NO. 10
(REV. 1-94)

5010-116

*U.S. GPO: 1994-300-892/60199

UNITED STATES GOVERNMENT

# memorandum

DATE: October 29, 1997

REPLY TO
ATTN OF: S. Vullo, L-Unit Counselor

SUBJECT: Incident Report dated October 28, 1997
RE: HOOVER, Larry 86063-024

TO: To Whom It May Concern

The incident report written by this officer October 28, 1997 should also contain this information. During the conversation between myself and inmate HOOVER 86063-024, inmate SHELL, Gregory 06801-424 was also present in the cell. Inmate SHELL 06801-424 could hear all statements made by inmate HOOVER 86063-024 and myself. I feel confident that inmate HOOVER 86063-024 was speaking in a loud enough voice for cell 30 and possibly 29 to hear him state,"That I guess we will have to start fires and burn our cells and destroy or cells".

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114

# Exhibit B-4

| U.S. Department of Justice | Discipline Hearing Officer Report (DHO) |
|---|---|
| Federal Bureau of Prisons | Incident Report Number: 713874 |

USP Florence (ADM-MAX)                                    Security Level - High

Name of Inmate: HOOVER, LARRY                           Reg. No. 86063-024
Date of Incident Report: 09/14/99                           Unit: F-A UNIT
Date of Incident: 09/14/99                              Offense Code(s): 101

    Summary of Charges
    -Assaulting any person (serious assault)

I.  NOTICE OF CHARGE(S)

  A.  Advanced written notice of charge (copy of Incident Report) was
     given to inmate on 09/15/99 at 07:45 by:
     W. WEIR, LIEUTENANT

  B.  The DHO Hearing was held on 09/29/99 at 14:40.

  C.  The inmate was advised of the rights before the DHO by:
     MARK COLLINS, UNIT MANAGER on 09/16/99
     and a copy of the advisement of rights form is attached.

II.  STAFF REPRESENTATIVE

  A.  Inmate waived right to staff representative?  Yes.

  B.  Inmate requested staff representative:
     N/A.

  C.  Requested staff representative declined or could not appear but inmate
     was advised of option to postpone hearing to obtain another staff
     representative with the result that...
     N/A.

  D.  A staff representative was appointed:
     N/A.

III.  PRESENTATION OF EVIDENCE

  A.  Inmate neither admits nor denies the charges.

  B.  Summary of Inmate Statement:

     INMATE DECLINED TO APPEAR FOR HIS DHO HEARING.

  C.  Witnesses:
     1.  The inmate requested witnesses?  No.
     2.  The following people were called as witnesses and appeared:  N/A.

     3.  A summary of the testimony of each witness follows:  N/A.



F.O.I. EXEMPT

HOOVER          86063-024          713874          09/29/99          page 2

    4.  The following persons requested were not called for the reasons given:  N/A.

    5.  Unavailable witnesses were requested to submit written statements and those statements received were considered:  N/A.

D.  Documentary Evidence:  In addition to the Incident Report and Investigation, the DHO considered the following documents:

    THE INMATE INJURY ASSESSMENT THAT WAS SUBMITTED, THE VIDEO, AND THE PHOTOGRAPH OF THE WEAPON THAT WAS DISCOVERED IN THE DRAIN.

E.  Confidential Information:  No confidential information was used.

---

IV.  <u>FINDINGS OF THE DHO</u>

    The following act(s) was(were) committed:  101A

    <u>Summary of Acts Committed</u>
    -Assaulting any person (serious assault)

    "A" = Attempting, aiding, and making plans

---

V.  <u>SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS</u> (Physical evidence, observations, written documentation, etc.):

ON 9/14/99, STAFF RECORDED AN ASSAULT ON THE F-UNIT RECREATION YARD. THE VIDEO REVEALS THAT HOOVER RESTRAINED INMATE _____ AS INMATE _____ STRUCK HIM IN THE FACE AND TORSO AREA WITH A CLOSED FIST. THE VIDEO ALSO SHOWS HOOVER APPEARING TO MONITOR THE SALLYPORT AREA FOR THE PRESENCE OF STAFF.  THE INJURIES DOCUMENTED TO THE VICTIM CORROBORATE THE INCIDENT REPORT.

HOOVER NEITHER ADMITTED NOR DENIED THE INCIDENT REPORT AS HE DECLINED TO APPEAR AT HIS DISCIPLINARY HEARING.  AS HOOVER CHOSE NOT TO PRESENT ANY EVIDENCE WITH WHICH TO REFUTE THE CHARGE AGAINST HIM, THE DHO CONSIDERED ONLY THE EVIDENCE NOTED.  HOOVER CLEARLY ASSISTED IN AN ASSAULT WHICH TOOK PLACE OVER THE PERIOD OF EIGHT MINUTES. THE VICIOUSNESS AND DURATION, AS WELL AS MULTIPLE INMATE ASSAULTING ONE INMATE, SUPPORT THIS CHARGE AT A 100 LEVEL.  ADDITIONALLY, _____ IS OBSERVED ATTEMPTING TO RETRIEVE AN ITEM FROM A DRAIN ON THE RECREATION YARD.  A SEARCH OF THIS AREA REVEALED THE PRESENCE OF A HOMEMADE KNIFE TYPE WEAPON CAPABLE OF INFLICTING STABBING INJURIES.  ALTHOUGH NO INMATE WAS CHARGED WITH THIS WEAPON, IT TOO SUGGESTS THAT THESE INMATES WERE INTENDING TO SERIOUSLY INJURE THE VICTIM.

BASED ON THE EVIDENCE AND RATIONALE NOTED, THE DHO FINDS THAT HOOVER COMMITTED THE PROHIBITED ACT, (CODE 101A) ASSAULTING ANY PERSON (A). THE CHARGE WAS AMENDED BY THE DHO TO INCLUDE AN (A) AS HOOVER CLEARLY AIDED _____ IN THIS ASSAULT BY RESTRAINING THE VICTIM AND



HOOVER                86063-024            713874            09/29/99            page 3

WATCHING FOR STAFF.

VI.   SANCTION OR ACTION TAKEN                    Offense Severity: G
                                                 SGT Available: 0

      Code #101A

            Disallow good conduct time
              Days Taken: 41.  Days Taken if Available:  41
            Disciplinary segregation:  60 days
            Loss of privilege (COMMISSARY):  120 days
            Loss of privilege (TELEVISION):  90 days

      DISALLOW 41 DAYS GOOD CONDUCT TIME FOR CODE 101A FOR COMP VVCLEA VIO
      010.

VII.  REASON FOR SANCTION OR ACTION TAKEN

      ASSAULTING ANY PERSON IS PROHIBITED BY FEDERAL LAW AND IS
      DETRIMENTAL TO THE SECURITY AND ORDERLY OPERATION OF THE INSTITUTION
      AS IT IMPEDES STAFF'S ABILITY TO MAINTAIN CONTROL OF HIS AREA OF
      RESPONSIBILITY AND THREATENS THE SAFETY OF OTHER STAFF AND INMATES.
      INJURIES INFLICTED DURING AN ASSAULT OF THIS NATURE MAY PROVE TO BE
      EXTREMELY SERIOUS, POSSIBLY LIFE THREATENING.  THIS INMATES GOOD
      TIME WAS DISALLOWED AS THIS TIME IS RESERVED FOR THOSE INMATES THAT
      DISPLAY GOOD CONDUCT.  ALTHOUGH UNRELATED TO THE ACT, COMMISSARY AND
      TELEVISION LOSS ARE IMPOSED AS THIS IS AN AGGREVATED ACT REQUIRING
      GREATER SANCTIONS.

VIII. APPEAL RIGHTS: Yes. The inmate has been advised of the findings, specific
      evidence relied on, action and reasons for the action.  The inmate has
      been advised of his right to appeal this action within 20 calendar days
      following receipt of the DHO report under the Administrative Remedy
      Procedure.  A copy of this report has been given to the inmate.

IX.   DISCIPLINE HEARING OFFICER

      SEAN FINLEY                                                    10-25-99
      Printed Name            Signature                                Date

Delivered to Inmate: _____  11/2/99 _____
                     Staff Signature          Date

F.O.I. EXEMPT

# Exhibit B-5

BP-A0288
AUG 11

**INCIDENT REPORT** CDFRM

**U.S. DEPARTMENT OF JUSTICE**   *2721685*   **FEDERAL BUREAU OF PRISONS**

### Part I - Incident Report

| 1. Institution: | **United States Penitentiary, Administrative Maximum, Florence, Colorado** | | | |
|---|---|---|---|---|
| 2. Inmate's Name<br>Hoover, Larry | | 3. Register Number<br>86063-024 | 4. Date of Incident<br>06/01/2015 | 5. Time<br>1:00 pm |
| 6. Place of Incident<br>SIS Office | | 7. Assignment<br>Unassigned | 8. Unit<br>D Unit | |
| 9. Incident<br>Use of the mail for abuses other than criminal activity<br>(writing letters in code); Communicating gang affiliation | | | 10. Prohibited Act Code(s)<br>296,335 | |

11. Description Of Incident (Date: <u>06/01/2015</u> Time: <u>1:00 pm am</u> Staff became aware of incident)
On the above date and time SIS was conducting a cell search in inmate ▮▮▮▮▮ cell (G01-103). During the search a code deciphers was located in ▮▮▮▮▮ property. The code is based on the "Pocket Reference Library Merriam-Webster's Pocket Dictionary" New Edition. Both Hoover #86063-024 and ▮▮▮▮▮ have the same dictionary in their property. The code is using page numbers and then the number of words on that page to find the word. The messages are being hidden in fake court cases. The message is addressed to Hoover (AKA "Chief") from ▮▮▮▮▮. The dictionary located in Hoover's property has ▮▮▮▮▮ name on the inside cover.

| 12. Typed Name/Signature of Reporting Employee<br>SIS Tech H. Redden/ *(signature)* | | 13.Date And Time<br>6/1/2015 1:30 PM | |
|---|---|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature)  *WJohnson /(signature)* | | 15. Date Incident<br>Report Delivered<br>6/1/15 | 16. Time Incident<br>Report Delivered<br>1845 |

### Part II - Committee Action

17. Comments of Inmate to Committee Regarding Above Incident

*I/m made no statement*

| 18. A. It is the finding of the committee that you: | B. | ✓ | The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|---|---|
| ___ Committed the Prohibited Act as charged.<br>___ Did not Commit a Prohibited Act.<br>___ Committed Prohibited Act Code(s) _____ | C. | | The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:
*Referred to DHO for 296/335 F/R. Based on I/R as written by writer UDC Recommends 335 expunged as Sec. 11, SEE Investigation and supporting documentation does not support charge. Writer, Investigation and documentation support 296 F/R*

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)
*If found guilty, UDC Recommends all appropriate sanctions available at DHO Level*

21. Date And Time Of Action *6-3-15 @ 0850* (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

*DHumphries / (signature)*      *SCedeno / (signature)*
Chairman (Typed Name/Signature)     Member (Typed Name)     Member (Typed Name)

21. Date and Time of Action: _____ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

| Part III – Investigation | 22. Date and Time Investigation Begins: 6/1/2015 6:35 PM |
|---|---|

**23. Inmate Advised of Right to Remain Silent:** You are advised of your right to remain silent at all stages of the discipline process. Your silece may be used to draw an adverse inference against you at any stage of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silece alone may not be used to support a finding that you have committed a prohibited act.

The Inmate was advised of the above right by:  **W. Johnson**          At (Date/Time):  **6/1/2015 6:45 PM**

**24. Inmate statement and attitude: Fair**
On the above date and time inmate Hoover, Larry #86063-024 was read his rights during the institutional disciplinary process in English, and he was provided a copy of the incident report, and the incident report was read to him in English. The inmate had no statement during this interview. The inmate's attitude was **Fair**.

**25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc:**

Inmate requested no witnesses.
Photo copy of Merriam-Webster's Dictionary
Photo copy of ciphered court case

**26. Investigator's comments and conclusions:**
Based on the information provided in the body of this report, and photo copies of the Merriam-Webster's Dictionary and ciphered court case document, I conclude this incident report is warranted. Specifically, Inmate Hoover, Larry #86063-024 has been appropriately charged with the violation of code 296 and 335.

**27. Action taken:**
Inmate will remain in his current assignment and given the appropriate sanctions; this incident report will be forward to the **UDC/DHO** for further review.

Date and Time Investigation
Completed:          **6/1/2015 7:59 PM**

Printed Name/Signature of Investigator:   W. Johnson          Title:  Act. Lt

①

KYLE V. JOHNSON 58 U.S. 31, 354 S.CT. 11, 66 F.3d 1, 187 L.Ed.3d 19 (1991)... U.S. V. WALLACE 380 U.S. 7, 172 S.CT. 17, 388 L.Ed.2d 5 (1994)... U.S. V. RAND 40 U.S. 11, 156 S.CT. 42, 357 F.2d 16, 30 L.Ed.2d 46 (90)... JAMES V. U.S. 2 U.S. 22, 2 S.CT 8, 354 F.3d 11, 184 L.Ed.2d 9 (1994)... U.S. V. DWECK 346 U.S. 34, 390 S.CT. 19, 388 F.2d 5, 312 L.Ed.3d 23 (1982)... BRADLEY V. U.S. 1 U.S. 1, 396 S.CT. 9, 394 F.2d 32, 1 L.Ed 2d 1 (2000)... SMITH V. DALEY 323 U.S. 52, 87 S.CT. 4, 173 F.3d 18, 138 L.Ed.2d 33 (1987)... U.S. V. VEGA 388 U.S. 5, 102 S.CT. 2, 235 F.3d 22, 79 L.Ed.2d 12 (1940)... U.S. V. RIOS 352 U.S. 40, 396 S.CT. 9, 388 F.3d 5, 240 L.Ed.2d 38 (1980)... U.S. V. LOVING 79 U.S. 12, 352 S.CT. 43, 391 F.2d 42, 396 L.Ed.2d 9 (2001)... ZIKLEY V. U.S 352 U.S. 40, 187 S.CT. 19, 125 F.3d 5, 244 L.Ed.2d 48 (2006)... MORRIS V. JONES 357 L.Ed.2d 16 (1998)... U.S. V. WOODS '52 U.S. 43, 197 S.CT. 35, 388 F.3d 5, 11 L.Ed.2d 5 (2004)... U.S. V. MATHIS 79 U.S. 12, 118 S.CT. 15, 321 F.3d 4, 198 L.Ed.2d 36 (2000)... U.S. V. VICTOR 240 U.S. 38, 388 S.CT. 5, 193 F.3d 37, 354 L.Ed.2d 11 (1972)... LANE V. U.S. 66 F.3d 1 (2003)... ROBERTS V. WILL 232 U.S. 49, 111 S.CT. 29, 102 F.3d 16, 388 L.Ed.2d 5 (2002)... U.S. V. RILEY 69 U.S. 4, 173 S.CT. 18, 261 F.3d 30, 320 L.Ed.2d 6 (2000)... U.S. V. LEON 168 U.S. 6, 11 S.CT. 24, 287 L.Ed.2d 4 (1996)... NASH V. COWAN 357 U.S. 16, 155 S.CT. 4, 400 F.3d 22, 45 L.Ed.2d 47 (2003)...

58/31 354/11 66/1 187/19 380/7 172/17 388/5 40/11 156/42 357/16 30/46 2/22 2/8 354/11 184/9
.IILF THIS CODE IS VERY IMPORTANT WE BOTH HAVE TO BE ABSOLUTE ABOUT THIS INTERPRET

346/34 340/19 380/5 312/23 1/1 396/9 394/32 1/1 323/52 57/4 173/18 132/33 380/5 102/2 235/22 79/12
SYSTEM WHENEVER WE SEE A WORD WITH A SMALL DASH IN FRONT WE DO NOT COUNT

352/40 396/9 380/5 240/38 79/12 352/43 391/42 396/9 354/40 187/19 125/5 244/48 357/16
THAT WORD WE ONLY COUNT THE WHOLE WORD THAT IS FARTHEST OVER TO

352/43 197/35 388/5 11/5 79/12 113/15 321/4 198/36 240/38 388/5 193/37 354/11 66/1
THE LEFT WE ALSO COUNT EVERY SINGLE LETTER ONLY WE KNOW THIS CODE

232/49 111/29 102/16 388/5 69/4 173/18 261/30 320/6 168/6 11/24 287/4
NOBODY ELSE DOES WE COMMUNICATE IN PLAIN SIGHT I AM READY

357/16 155/4 400/22 45/47
TO HANDLE YOUR BUSINESS...

(72 WORDS)      (1)

**DISCIPLINE HEARING OFFICER REPORT**
BP-S304.052 AUG 11

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| INSTITUTION | ADX Florence | INCIDENT REPORT NUMBER | 2721685 | | |
|---|---|---|---|---|---|
| INMATE NAME | Hoover, L. | REG NO | 86063-024 | UNIT | K |
| DATE OF INCIDENT | 6/1/2015 | DATE OF INCIDENT REPORT | 6/1/2015 | | |
| OFFENSE/CHARGES | 296 – Use of Mail For Abuses Other Than Criminal Activity, Circumventing Mail Monitoring Procedures 335 – Communicating Gang Affiliation (Removed) | | | | |

**I.   NOTICE OF CHARGE(S)**

| A.  Copy of Incident Report was given to inmate on/by staff name: | 6/1/2015 1845 by Lt. J. Johnson |
|---|---|
| B.  The DHO Hearing was held on: | 8/5/2015 10:10 a.m. by S. Beicker-Gallegos |
| C.  The inmate was advised of the rights before the DHO on/by staff name: | 6/3/2015 0850 by D. Humphries |

**II.   STAFF REPRESENTATIVE**

| A.  Inmate requested or was appointed staff representation | Yes | X | No | |
|---|---|---|---|---|

| B.  Statement of Staff Representative: Osland |
|---|
| Staff Representative Osland advised inmate Hoover did not request anything in relation to this report.  Mr. Osland indicated inmate Hoover advised him he(inmate Hoover) was prepared to proceed with the hearing. |

**III.   PRESENTATION OF EVIDENCE**

| A.  Inmate | admits | | Denies | X | neither | | the charges. |
|---|---|---|---|---|---|---|---|

| B.  Summary of inmate statement: |
|---|
| "The stuff which was found was in ▓▓▓▓▓ property, not mine.  Also, the 296 is not supported, because I didn't use the mail.  I didn't send anything through the mail."  You later indicated maybe you were planning to communicate but had not yet. |

| C.  Witness(es): | | | | | |
|---|---|---|---|---|---|
| 1. The inmate requested witnesses | Yes: | | No: | X | |

| 2. The following persons were called as witnesses at this hearing and appeared. |
|---|
| N/A |

| 3. Summary of the testimony of each witness: |
|---|
| N/A |

| 4.  The following persons requested were not called for the reason(s) given. |
|---|
| N/A |

| 5.  Unavailable witnesses submit written statements and those statements received were considered. | Yes: | | No: | | N/A | X |
|---|---|---|---|---|---|---|
| N/A | | | | | | |

Page 1

**DISCIPLINE HEARING OFFICER REPORT**
BP-S304.052 AUG 11

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| D. Documentary Evidence: | |
| The inmate did not submit any documentary evidence. | |
| In addition to the Incident Report and Investigation, the DHO considered the following documents: Photocopies of multiple pages from the Merriam-Webster's Picket Dictionary revealing code words and a hand written coded message to inmate Hoover along with the deciphered message. | |
| E. Confidential information was used by DHO in support of his findings, but was not revealed to the inmate. The confidential information was documented in a separate report. The confidential information has been determined to be reliable because: | |
| N/A | |

**IV. FINDINGS OF THE DHO**

| | | |
|---|---|---|
| X | A. The act was committed as charged. | |
| | B. The following act(s) was committed: | |
| | C. Summary of Charges: | |
| | D. No prohibited act was committed: Expunge according to Inmate Discipline PS 5270.09 | |

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS**

You were advised of your rights before the Discipline Hearing Officer and stated you understood those rights. You confirmed your request for Mr. Osland as your staff representative. You confirmed you did not request any witnesses. The DHO noted the handwritten correction to the time in Section 13 and finds it to be the result of a typographical error and not a separate incident. The DHO determined the error has in no way hampered your ability to prepare and present a defense. The DHO noted you did not provide documentary evidence to dispute the report.

The DHO finds you committed the prohibited act of **Use of the Mail for Abuses Other Than Criminal Activity, Circumventing the Mail, Code 296,** based on your possession of a dictionary which had another inmate's name in it and which is identical to a dictionary located in the other inmate's property along with a coded message to you which was deciphered by staff utilizing the dictionary.

The DHO bases this finding on the incident report writer's statement in Section 11 which indicates while conducting a cell search of inmate _____ property, a code decipher was located. According to the report, the code is based on the Pocket Reference Library Merriam-Webster's Pocket Dictionary New Edition which both you and the other inmate had in your possession. The report advises the code utilized page numbers and the number of words on that page to determine the appropriate word. According to the report, a message addressed to you was located in the other inmate's property. Additionally, a search of your property revealed you were in possession of the same dictionary and it contained the other inmate's name on the inside cover. In determining a finding of guilt, the DHO considered photocopies of multiple pages from the dictionaries which revealed code words and a coded message hidden in an alleged court case. The DHO also considered the deciphered message which appears to have been written to you.

During investigative process as well as during your UDC hearing, you elected not to comment. During your DHO hearing, you stated, "The stuff which was found was in _____ property, not mine. Also, the 296 is not supported, because I didn't use the mail. I didn't send anything through the mail." You later indicated maybe you were planning to communicate but had not yet. The DHO advised you, although this coded message may not have reached you, it was apparent you had communicated as both you and the other inmate were in possession of the dictionary with the coded words. The DHO also noted the other inmate's name was written in the front cover of your dictionary. In reference to your contention that the Code 296 is not appropriate the DHO advised the code is appropriate as it clearly appears you were utilizing coded messaging to circumvent mail monitoring and

**DISCIPLINE HEARING OFFICER REPORT**
**BP-S304.052 AUG 11**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

communicate with another inmate in which you did not have approved correspondence privileges. The DHO noted your admission you may have been planning to communicate but had not done so yet. The DHO advised you it is reasonable to believe you have communicated or you would not both have the dictionary decipher. The contents of the message seem to be a clarification of the code decipher as well as both of your intentions to engage in some sort of "business" which had clearly been previously discussed. Additionally, although the DHO finds sufficient evidence to suggest you have engaged in the misconduct described, the DHO also advised you your admission you may have been planning to communicate is clearly an admission of an attempt to engage in the misconduct described.

Staff Representative Osland appeared at your hearing and performed the duties of your staff representative. Staff Representative Osland advised you did not request anything in relation to this report. He indicated you advised him you were prepared to proceed with the hearing.

Based on the greater weight of the evidence which includes the staff member's written statement in Section 11 and supporting documentation confirming you and another inmate were utilizing coded messaging to communicate without correspondence approval, the DHO finds you did commit the prohibited act, **Use of the Mail for Abuses Other Than Criminal Activity, Circumventing the Mail, Code 296.** As there is insufficient evidence to determine whether or not you were communicating gang activity, the DHO is not finding you guilty of the Code 335 charge.

## VI. SANCTION OR ACTION TAKEN

Sanctioned 296:
15 Days Disciplinary Segregation (DS)suspended pending 180 days clear conduct
120 Days Loss of Commissary
$75.00 Monetary Fine

## VII. REASON FOR SANCTION OR ACTION TAKEN

The action on the part of any inmate to use the mail in an unauthorized manner poses a serious threat to the ability of the staff to control the use of the mail. Those actions interfere with the ability of staff to monitor whether inmates are using the mail for prohibited or illegal purposes. The sanctions imposed by the DHO were taken to let you know that you and you alone will be held responsible for your behavior at all times.

The sanction of disciplinary segregation (DS) was imposed to comply with the required sanctioning guidelines for inmates sentenced under the VCCLEA (Violent Crime Control Law Enforcement Act) for violent offenders. However, this sanction was suspended as it is believed disciplinary segregation is not necessary in this case and the suspended sanction will provide sufficient deterrence of future misconduct.

The sanction for loss of commissary was imposed to enforce the standard that inmates be held accountable for their actions and to deter future misconduct.

The sanction of the monetary fine was imposed to enforce the standard that inmates be held accountable for their actions and to deter future misconduct.

**DISCIPLINE HEARING OFFICER REPORT**
**BP-S304.052 AUG 11**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

VIII. APPEAL RIGHTS: The inmate has been advised of the findings; specific evidence relied on, sanction(s) and reasons for the sanction(s). The inmate may appeal this matter through the Administrative Remedy Program within 20 calendar days after receiving a copy of this report.

| | Yes | X | No | |
|---|---|---|---|---|

**IX. DISCIPLINE HEARING OFFICER**

| Printed Name of DHO | Signature of DHO | Date |
|---|---|---|
| S. Beicker-Gallegos | *SBeicker-Gallegos* | 08-12-2015 |
| Report delivered by: | | Date: 8/25/15  1:30 pm |

# Exhibit B-6

BP-A0288
AUG 11

**INCIDENT REPORT** CDFRM

**U.S. DEPARTMENT OF JUSTICE**

**FEDERAL BUREAU OF PRISONS**

**Part I - Incident Report**

| 1. Institution: ADX | | | |
|---|---|---|---|
| 2. Inmate's Name<br>Hoover, Larry | 3. Register Number<br>86063-024 | 4. Date of Incident<br>10/07/2015 | 5. Time<br>11:25 am |
| 6. Place of Incident<br>Visiting Room | 7. Assignment<br>Unassigned | 8. Unit<br>K-Unit | |
| 9. Incident<br>Gang Communication | | 10. Prohibited Act Code(s)<br>335 | |

11. Description Of Incident (Date: _10/07/2015_ Time: _11:25 am_ Staff became aware of incident)

An investigation of a social visitation of inmate Hoover from September 18, 2015 to September 20, 2015 was conducted. This investigation was concluded October 7, 2015. Specifically, IM Hoover was recorded discussing STG related topics and GD Members. Further investigation revealed he mentions activities of several known Gangster Disciple associates. Specifically, he discusses a meeting between the Gangster Disciples and the Black P Stones, which occurred on the street. There is communication throughout the visit that has been determined STG related and prohibited. On September 18, 2015, inmate Hoover was given a warning in reference to not discussing STG topics.

| 12. Typed Name/Signature of Reporting Employee<br>A. Kelley | 13.Date And Time<br>10/7/2015 1:00 pm |
|---|---|
| 14. Incident Report Delivered to Above Inmate By<br>(Type Name/Signature) | 15. Date Incident<br>Report Delivered<br>10-7-15 | 16. Time Incident<br>Report Delivered<br>1523 |

**Part II - Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident

The Warden was going to listen to the phone call I made.

18. A. It is the finding of the committee that you:

☑ Committed the Prohibited Act as charged.
☐ Did not Commit a Prohibited Act.
☐ Committed Prohibited Act Code(s) _____

B. ☐ The Committee is referring the Charge(s) to the DHO for further Hearing.

C. ☑ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days.

19. Committee Decision is Based on Specific Evidence as Follows:

Committee based it decision on the description of the incident report + supported memos.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

30 Days Commissary Restriction

21. Date And Time Of Action _10-13-15 955AM_ (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings.)

| W. Heroyal | | |
|---|---|---|
| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |

INSTRUCTIONS: All items outside heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.
DISTRIBUTE: ORIGINAL-Central File record; COPY-1- DHO; COPY-2- Inmate After UDC Action; COPY-3- Inmate within 24 hours of Part I Preparation.

PDF

FOI EXEMPT

Prescribed by P5270

Replaces BP-S288.052 Of MAY 94

| Part III – Investigation | 22. Date and Time Investigation Begins: 10/7/2015 3:23 PM |
|---|---|

**23. Inmate Advised of Right to Remain Silent:** You are advised of your right to remain silent at all stages of the discipline process. Your silece may be used to draw an adverse inference against you at any stage of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silece alone may not be used to support a finding that you have committed a prohibited act.

The Inmate was advised of the above right by:  **J. Teeter**        At (Date/Time):  **10/7/2015 3:23 PM**

**24. Inmate statement and attitude: Fair**

On the above date and time inmate Hoover, Larry #86063-024 was read his rights during the institutional disciplinary process in English, and he was provided a copy of the incident report, and the incident report was read to him in English. The inmate stated, "I have no statement." The inmate's attitude was **Poor.**

**25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc:**

Inmate requested no witnesses.
Supporting memos from A. Kelley SIS Tech (attached)

**26. Investigator's comments and conclusions:**

Based on the information provided in the body of this report and the supporting memorandums. This Lieutenant finds this incident report has correct times and does support the charge for a code 335.

**27. Action taken:**

Inmate will remain in his current assignment and given the appropriate sanctions; this incident report will be forward to the **UDC/DHO** for further review.

Date and Time Investigation
Completed:        **10/7/2015 4:21 PM**

Printed Name/Signature of Investigator:   J. Teeter        Title:   Lieutenant

FOI EXEMPT



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary –*
*Administrative Maximum*

Florence, Colorado  81226

October 7, 2015

MEMORANDUM FOR **UDC**

FROM:            A. Kelley, SIS Technician

SUBJECT:            Inmate Hoover, Larry, Reg. No. 86063-024

On September 23, 2015, SIS began reviewing a visit, which occurred between inmate Hoover and two visitors, ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛. During this visit, inmate Hoover was recorded several times discussing gang related topics with both visitors.  Specifically, Hoover is recorded discussing meetings that are taking place on the street between known members and associates of the Gangster Disciples, Vice Lords, and Black P Stones.  Furthermore, inmate Hoover discusses several highly influential GD members to include: ⬛⬛⬛⬛⬛⬛ ⬛⬛⬛, Johnny "Crusher" Jackson, ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ There are several other individuals mentioned throughout this three day visit, who have not yet been identified.

As mentioned above, inmate Hoover is recorded discussing a meeting, which took place between members of the GDs and other gangs. Specifically, it was revealed that this meeting took place in Minnesota and was hosted by ⬛⬛⬛⬛⬛⬛⬛⬛⬛, a supporter and advocate of inmate Hoover's release.  Further, during the visit on September 18, 2015, inmate Hoover begins directing ⬛⬛⬛⬛⬛ on how the group can move forward and hold its members accountable.  He states they need to have accountability and he is unsure if ⬛⬛⬛⬛⬛⬛⬛⬛ can get the backing due to his bad track record.

On September 19, 2015, ⬛⬛⬛⬛⬛⬛ begins discussing inmate ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ and a demonstration/rally that took place in Chicago in response to BOP restrictions on his communication. This information was corroborated during a phone call placed by inmate ⬛⬛⬛ on September 22, 2015, to his daughter. During this phone call, inmate ⬛⬛⬛ discusses this same rally on the street held for him, as well as the meeting with ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ in Minnesota between several different gangs.

Further into the call, ⬛⬛⬛⬛⬛⬛ begins discussing a clothing line with inmate Hoover titled "Gentleman of Distinguished Nature" that acronym discussed for this clothing line is GDN, the same acronym utilized by the Gangster Disciples Nation.  They then discuss the clothing line and the issues that have arose in their attempts to solidify the company.  Hoover uses personal stories of when he had a clothing line (Ghetto Prisoner) on the street and how he was able to turn a profit.



Later in the visit, _____ discusses _____, who has been identified as a former GD member and was recently released from Illinois State DOC after serving 19 years on a Murder conviction. Next, Hoover refers to the "three finger assassin," stating he is a Governor in Florence, Arizona Penn, but that he has not heard anything from him.

Next, _____ begins discussing inmate _____, who is currently housed at FMC Butner. _____ references people raising questions about inmate _____ status within the GDs, and Hoover rebuts the allegations, "90% of what you read is authored by _____, he got his promotion for that." From this conversation, it is believed that inmate Hoover is stating that _____ is still to be trusted, that he earned this trust through his continued support of the GD mission as well as authoring the materials, bi-laws, and constitutions of the GD organization.

At approximately 1:00 PM, _____ and inmate Hoover begin discussing _____, specifically discussing that there is pertinent paperwork on them both. The conversation alleges that they are both getting time off their sentence, and it is possibly believed that they might be cooperating with an investigation. Inmate Hoover directs _____ to print off what she can find and send it to him.

Inmate Hoover then discusses the direction of the organization on the street, discussing that everyone is so worried about themselves, "walking on the right side of the street vs. the left", that there are no more distinguishing streets, that people need to be walking together. It is believed that this is Hoover attempting to convey to _____ that there is a truce or a coalition that needs to be formally in place for all gangs to come together.

During the September 20, 2015, visit, inmate Hoover is asked about _____, identified as GD Governor, _____ is asking if Hoover knows him and alleges that _____ "used to be with the kids." Inmate Hoover responds stating, "No, I don't know him." It is believed that _____ is using Hoover's name on the street in order to gain credibility. _____ appears to be fact checking in this instance. _____ is a known GD member residing in Illinois.

It is believed that inmate Hoover is attempting to run, control, and guide the actions of the GD organization from inside of the ADX. Through the visiting room and the gang facilitators, _____ _____ it is clear that they are attempting to check on several GD related topics as well as seeking explicit direction from inmate Hoover.

SENSITIVE BUT UNCLASSIFIED (SBU)



# Exhibit B-7

BP-A0288
JAN 17
**U.S. DEPARTMENT OF JUSTICE**

**INCIDENT REPORT**

**FEDERAL BUREAU OF PRISONS**

**Part I – Incident Report**

| 1. Institution: USP ADX | | Incident Report Number: 3022831 | |
|---|---|---|---|
| 2. Inmate's Name: Hoover, Larry | 3. Register Number: 86063-024 | 4. Date of Incident: 08/06/2017 | 5. Time: 11:00 am |
| 6. Place of Incident: ADX Visiting Room | 7. Assignment: NA | | 8. Unit: K-Unit |
| 9. Incident: Telephone to Further Criminal Activity, Gang Comm. | | 10. Prohibited Act Code (s): 197, 335 | |

11. Description of Incident (Date: 08/16/2017      Time: 11:00 am      Staff became aware of incident):

On August 6, 2017 during a social visit in the ADX visiting room booth 8 inmate Hoover made multiple comments about having the "Blue Print" re-published so that it could be handed out and read by all the children. Hoover refers to the "Marketing Plan" section of the publication several times. The Blue Print is a publication printed in October 1995 and was a failed attempt at legitimizing the Gangster Disciples. It was published during the time that the "Gangster Disciples" were transitioning to "Growth and Development". "The Blue Print' carries the symbols of the six pointed star and pitch forks, utilized by Growth and Development and the Gangster Disciples. During the Visit Hoover and his visitors continued to discuss multiple known gang members and there involvement in several businesses. Inmate Hoover was advised to cease any and all Gang communication during a previous visit with the same visitors, the same weekend.

| 12. Typed Name/Signature of Reporting Employee: D. Bilbrey | 13. Date And Time: 08/16/2017 11:30 am |
|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature) | 15. Date Incident Report Delivered: | 16. Time Incident Report Delivered: |

**Part II – Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident:
Inmate stated "I wasn't talking any gang information, The document I was talking about was in my trial and has been seen by law enforcement, DA's and Judges" STS is taking away my rights to communicate.
Inmate provided writen statement and documentaion of the "Blue Print" of 10 pages, + 7 pages of other evidence

| 18. A. It is the finding of the committee that you: | B. [X] The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|
| ☐ Committed the Prohibited Act as charged: | C. ☐ The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |
| ☐ Did not Commit a Prohibited Act. | |
| [X] Committed Prohibited Act Code (s). 335 | |

19. Committee Decision is Based on Specific Evidence as Follows:
Based on the writers area in section 11 where they put that during a visit Hoover made multiple comments about the "Blue Print" being re-published and handed out to the children. Based on this information this is refered to DHO. Also Based on undiscloseable documents provided by SZS. Inmate is found guilty of 335

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):
Refered to DHO. UDC cannot sanction at this level.
Inmate sanctioned to 15 days LOP commisary to deter future violations.

21. Date and Time of Action: 8/17/17 646  (The UDC Chairman=s signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings). 9/19/17 700am Rehearing

Chairman (Typed Name/Signature): Housaks

Member (Typed Name): Hessitt

Member (Typed Name):

INSTRUCTIONS: All items outside of heavy rule are for staff use only.  Begin entries with the number 1 and work up.  Entries not completed will be voided by staff.

Distribute:  Original-Central File Record; COPY-1-DHO: COPY-2-Inmate after UDC Action; COPY 3-Inmate within 24 hours of Part I Preparation

PDF                    Prescribed by P5270                    Replaces BP-A0288 of AUG 11

**Part III - Investigation**

| 22. Investigation Began: | Date: | 08/16/2017 | Time: | 1956 | # 3022831 |
|---|---|---|---|---|---|

23. Inmate Advised of Right To Remain Silent: You Are Advised Of Your Right To Remain Silent At All Stages Of The Disciplinary Process But Are Informed That Your Silence May Be Used To Draw An Adverse Inference Against You At Any Stage Of The Institutional Disciplinary Process. You Are Also Informed That Your Silence Alone May Not Be Used To Support A Finding That You Have Committed A Prohibited Act.

| The Inmate Was Advised Of The Above Right By | At Date/Time | |
|---|---|---|
| Craig  Lt | 08/16/2017 1956 | |

**24. Inmate Statement And Attitude**

Inmate Hoover, Larry Reg No. #86063-024 was advised of his rights and indicated verbally that he understood his rights.
Inmate Hoover, Larry was given a copy of the incident report.
Inmate Hoover, Larry read the contents of this report and was asked if he understood what he read. He replied: "Yes."
Inmate Hoover, Larry stated; "the <u>Blueprint</u> is not Gangster Disciple but is Growth and Development and was used as his defense in his legal case. And if you read it you would want your kids to read it". Inmate Hoover displayed fair attitude.

**25. Other Facts About the Incident, Statements of Those Persons Present At Scene, Disposition Of Evidence, Etc.**

Inmate Hoover, Larry Reg No. #86063-024 was asked if he wanted a witness and stated NO.
See Attached:
Supporting Memo from staff

**26. Investigator's Comments And Conclusions**

Based upon the following facts I conclude Inmate Hoover, Larry Reg No. #86063-024 committed the prohibited act of Code: 197-Phone Abuse, Criminal 335-Gang Communication.

1) In section 11 of the incident report it indicates: Inmate Hoover was communicating with a visitor during a social visit about Gangster Disciples activity and about Gangster Disciples members.

2) While conducting this investigation, Inmate Hoover was the only inmate assigned to that cell.

3) The SIS investigation concluded that the conversation gave information specifically about gang activity.

Therefore, based upon inmate Hoover's admission and the evidence lead this Lieutenant to believe that a violation of Bureau policies and regulations has been committed.

**27. Action Taken**

Inmate Hoover, Larry Reg No. #86063-024 will remain in his current status in K-unit pending a hearing by the UDC/DHO.

| Date And Time Investigation Completed | 08/16/2017  2058 | |
|---|---|---|
| Printed Name Of Investigator | J. Craig | |
| | | Lieutenant |
| Signature | | Title |

The statement in this incident report mis-construes the facts, and can be interpreted as willful disregard for authority, if not put into proper context It is my firm belief that the following enumer- ated facts will clarify the mis-conception regarding my conduct. (1) The report states that I Larry Hoover was talking gang talk ON My 8-6-17 visit after being warned against it on a previous visit. The fact of the Matter is, I was previously warned by S.I.S. Tech Mr. Bilbrey to stop talking what he considered to be gang talk, I asked him what had I said that constituted gang talk, he took my question as me being dis-ingenuous, and simply replied you're a smart man, and walked away without any explination (My staff representive can confirm the stated exchange between myself and Mr. Bilbrey). Therefore given Mr. Bilbrey's failure to explain what constituted gang talk left me ignorant in that regard. So on 8-6-17 when I discussed re-publishing the Blue Print, it wasn't an act of defiance, I honestly never thought discussing a book which clearly states that its intent and per pose is to move the youth away from gang mentality, it in no way can be interpreted as advocating gang activity, but rather a growth and developement away from it (Please read the marketing mentioned in the incident report. Exhibit A). (2) The incident report decry the fact that me and my visitors discussed multiple known gang nenbers and their involvement in several businesses, note, he didn't say illegal businesses, these people are old friends, 50 and 60 year old men who are the success storys, rehabilitated citizens who gave up crime, gone straight and are contributing to society, all of these men have applied the principles of the Blue Print, inclu- ding Wallace "Gator" Bradley (see exhibit B Bradley discussing the Blue Print with president Bill Clinton). (3) The incident report incorrectly states that the Blue Print carries the six point star and pitch fork the same as the Gangster Disciples, that isn't true, in fact the Blue Print cover depits a Chicago sky-line (see exhibit A a picture of the Blue Print Book cover). In fact in 2016 Chicago congressman Bobby Rush came to visit me asking for any in-put that I could offer in aide of stemming the violence in Chicago, it was in that regard that the Blue Print was discussed. It's un-rea- sonable to repress a mans expression of ideas and solutions toward a social problem, he knows well because of imperical experience, because he once was or still believed to be a gang- leader.

Respectfully submitted

# Exhibit B-8

BP-A0288
JAN 17

**~CIDENT REPORT**

**U.S. DEPARTMENT OF JUSTICE**  **FEDERAL BUREAU OF PRISONS**

---

**Part I - Incident Report**

| 1. Institution: Administrative Maximum, ADX Florence, Colorado | | Incident Report Number: 3148047 | |
|---|---|---|---|
| 2. Inmate's Name: Hoover, Larry | 3. Register Number: 86063-024 | 4. Date of Incident: 7/18/2018 | 5. Time: 8:52 AM |
| 6. Place of Incident: KB Yard and JA Yard | 7. Assignment: Unassigned | | 8. Unit: K-B Unit |
| 9. Incident: Participating in an unauthorized meeting or gathering<br><br>Being in an Unauthorized area without staff authorization | | 10. Prohibited Act Code(s) 315 & 316 | |

11. Description of Incident (Date: 7/18/2018   Time: 8:52 AM (Staff became aware of incident)

SIS was notified on July 19, 2018, that possible unauthorized communication occurred between inmate Hoover, Larry, Reg. No. 86063-024, housed in K-B Unit and an inmate currently in _____ on July 18, 2018. A review of the cameras was conducted on July 19, 2018, and show at 8:52:20 AM, on camera 421 Main YD, inmate Hoover is observed standing near the JA access stairs/door in the K-A Yard, out of bounds, attempting to communicate with another inmate. He continues to communicate until approximately 9:04 A.M. Further review of camera 786 JA Yard reveals inmate _____, laying on the ground of the cross-over door in the JA yard communicating from 8:52:20 A.M. until approximately 9:04 A.M. Inmate Hoover can be observed on Camera crossing the "out of bounds" red line, which is clearly marked in front of the JA Yard access stairwell and door.

| 12. Typed Name/Signature of Reporting Employee: SIS Lt. A. Kelley | | 13.Date And Time: 7/19/2018  1:00 pm |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature): | 15 .Date Incident Report Delivered: 7/19/18 | 16. Time Incident Report Delivered: 3:54p |

**Part II - Committee Action**

17. Comments of Inmate to Committee Regarding Above Incident:

I Did not step accross the red line. I Did talk to the guy.

| 18. A. It is the finding of the committee that you: | B. ___ | The Committee is referring the Charge(s) to the DHO for further Hearing. |
|---|---|---|
| ___ Committed the Prohibited Act as charged.<br>___ Did not Commit a Prohibited Act.<br>_X_ Committed Prohibited Act Code(s). 315  316 | C. ___ | The Committee advised the inmate of its finding and of the right to file an appeal within 20 calendar days. |

19. Committee Decision is Based on Specific Evidence as Follows:
Based on the writers statement in section 11 where they see Hoover on camera Standing by the JA access door, out of bounds comunicating to another inmate. Also Hoover admits to talking to other inmate. UDC Finds Hoover Guilty of 315 and 316.

20. Committee action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act):
UDC sanctions I/m Hoover to 15 days LP Commisary for 315 and 15 days LP Commisary for 316. This is to deter future violations.

21. Date and Time of Action: 7/23/18 1050 (The UDC Chairman's signature certifies who sat on the UDC and that the completed report accurately reflects the UDC proceedings).

| Chairman (Typed Name/Signature) | Member (Typed Name/Signature) Skinney / Skinney | Member (Typed Name) |
|---|---|---|

INSTRUCTIONS: All items outside of heavy rule are for staff use only. Begin entries with the number 1 and work up. Entries not completed will be voided by staff.

| Part III - Investigation | 22. Date A Time Investigation Began |
|---|---|
| | 07-19-2018 @ 02:00 PM |

23. Inmate Advised Of Right To Remain Silent: You are advised of your right to remain silent at all stages of the discipline process. Your silence may be used to draw an adverse inference against you at any stage of the discipline process. Your silence alone may not be used to support a finding that you have committed a prohibited act.

| The Inmate Was Advised Of The Above Right By | M. Palider, Lieutenant | At (Date/time) | 07-19-2018 @ 02:00 PM |
|---|---|---|---|

24. Inmate statement and attitude

On the above date and time, the inmate was read his rights during the institutional disciplinary process in English, and he was provided a copy of the incident report, the incident report was read to him in English.
The inmate stated about the incident, "I was talking at the door, but I never crossed the red line."
The inmate's attitude was, FAIR.

25. Other facts about the incident, statements of those persons present at scene, disposition of evidence, etc.

Incident date was on 07-18-2018 @ 08:52 PM.

Staff became aware of and investigated the incident 07-19-2018.
Incident report investigated on 07-19-2018 @ 02:00 PM.
Inmate Hoover recieved a copy of incident report on on 07-19-2018 @ 03:54 PM.
Inmate Hoover was advised of his rights.
Inmate Hoover did acknowledge that he understood his rights.
Inmate Hoover did not provide written documentation for his defense against this.
Inmate Hoover stated about the incident, "I was talking at the door, but I never crossed the red line."
Inmate Hoover did speak to me more about this incident. He told me he was talking to another inmate but that he never crossed the red line. I asked him where the red line was and he confirmed that it is painted on the sidewalk, just off the dirt. I asked him if he was standing on the concrete, he said he was standing in the dirt.
I interviewed SIS Lieutenant Kelley regarding this incident report. Lieutenant Kelley informed me that video was saved to the DHO file.
I watched the video file. The inmate identified as Hoover can clearly be seen standing directly in front of the door that leads into J/A recreation yard. The inmate is standing directly on the concrete and displays motions for a period of time that would indicate the he was engaged in conversation.
I toured the area in which this incident happened. There is a gap at the bottom of the J/A recreation door that measures approximately three quarters of an inch high, across the length of the door.

26. Investigator's comments and conclusions

Inmate Hoover stated about this incident, "I was talking at the door, but I never crossed the red line." I toured the area in which inmate Hoover was standing. There is a large gap underneath the door in which communication can easily be accomplished. I was able to verify the area where the red line is clearly painted. It is on the concrete, just off the dirt area making a square that surrounds the staircase on each side of the door. Watching the video, it is clear to me that inmate Hoover is standing across the red line, clearly out of bounds, and displays body language indicative of communication with another individual. After investigating the information contained within the body of the incident report, reviewing the video footage which shows that inmate Hoover is standing on the concrete with body language indicating communication, and seeing first hand where the out of bounds red line is painted to confirm that inmate Hoover is standing inside the out of bounds area, and the fact that the inmate admits to communicating with another inmate, I find this report to be corectly written and the charges of, Participating in an unauthorized meeting, (315), and Being in a unauthorized area, (316), to be appropriate.

27. Action taken

Inmate will remain in his current assignment and given the appropriate sanctions. This incident report will be forward to the UDC/DHO for further review.

| Date and Time Investigation Completed | 07-19-2018 @ 05:08 PM |
|---|---|

| Printed Name/Signature Of Investigator | M. Palider | Title | Lieutenant |
|---|---|---|---|