**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | No. 95 CR 508-10 |
| | ) | Judge Leinenweber |
| LARRY HOOVER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM REGARDING**
**BUREAU OF PRISONS PROCEDURES FOR**
**TRANSFERRING PRISONERS OUT OF ADMAX**

NOW COMES the Defendant, LARRY HOOVER, by and through his attorneys, MONICO & SPEVACK and the LAW OFFICES OF JUSTIN A. MOORE, and submits the following memorandum in response to the Court's Order of August 12, 2020. *See* Dkt. #1297.

**Introduction**

The Court has requested supplemental briefing with respect to the following:

> [T]he parties shall file supplemental briefing on Bureau of Prisons ("BOP") procedure. Specifically, the Court would find it helpful if the parties informed it about BOP procedure for transitioning prisoners out of USP Florence ADMAX to a lesser security facility. The Court is interested in whether an internal process exists to transfer from that facility and, if so, whether Hoover has availed himself of that process or whether the BOP has ever instituted the process to remove Hoover from the facility to a lesser security facility.

Dkt. #1297.

Defendant responds to the Court's request is below.

1

## Transition Process

Assuming a defendant does not complete his sentence, apparently the most common, and for many the only way to transfer out of ADX is to complete a "Step Down" program, in which a prisoner works through a series of successively lower security levels to earn his way to placement at a lower security prison and one that will offer more freedom. *See, e.g.,* allegations in *Cunningham v. Federal Bureau of Prisons,* No. 12 CV 01570, Second Amended Complaint, Dkt. #274, at ¶ 17. According to an ADX Inspection Report prepared by the District of Columbia Corrections Information Council, ADX's "Step Down" Program intends to prepare inmates to function in less restrictive conditions. ADX Inspection Report (October 31, 2018), at 12[1]. It is designed as at least a two-year process. The Inspection Report explains that Phase One requires the inmate to have one year of clear conduct prior to being placed in in a transitional unit (Phase Two), where he usually spends six (6) months and then transferred to USP Florence High, where he is housed with a cellmate for three to six months before moving to another, potentially regular security federal penitentiary. Meanwhile, completing the program can take years because any transgression, however mild, can swing the prisoner back to the very beginning.

---

[1] https://cic.dc.gov/sites/default/files/dc/sites/cic/publication/attachments/Florence%20ADMAX%20Inspection%20Report%20and%20BOP%20Response%20-%2010.31.18.pdf

According to the ADX Inspection Report, *supra,* the purpose of the Step Down Program is to prepare the prisoner to function in less restrictive conditions. Hoover is housed presently in Kilo Unit, which is "the least restrictive housing at Florence ADX." To be eligible for placement in Kilo Unit, inmates "must have no history of assaults on staff and be incident free for three consecutive years." ADX Inspection Report, at 11.

Hoover has been in Kilo Unit, consistent with the Step Down program, but though he has been there four years he had never been moved along.[2] He also understands that given his age, his placement has something to do with a "senior" program. He has never been advised of any appeal process but that the matter rests in the institution's discretion. Moreover, he has been told informally and repeatedly that transfer to a less restrictive facility was not going to happen, and thus been led to believe that if a process *did* exist any application from him would be useless. The ADX Inspection Report, *supra,* reviewed transfer requests *into* the Step Down Program made by five inmates, a total of eleven requests beginning in 2015. Ten were rejections, *see* ADX

---

[2] Although the ADX Inspection Report lists Joker Unit as the transitional unit, everywhere else includes Kilo, which only makes sense because it is the next step down from Joker on the least restrictive ladder. *See, e.g.,* Montaldo, Maximum Security Federal Prison: ADX Supermax, *https://www.thoughtco.com/adx-supermax-overview-972970* (Joker and Kilo described as "Intermediate Unit/Transitional Units which houses [sic] prisoners entered into the Step-Down Program which they can earn their way out of ADX." *See also Cunningham v. Federal Bureau of Prisons,* No. 12 CV 01570 (D.Colo.), Second Amended Complaint at Dkt. 274, ¶¶ 22, 30, 487 (alleging that in recent years Kilo Unit along with Joker have been used as transitional units for prisoners entered into the Step Down program to earn their way out of ADX to a lower security classification); *Tallab v. Sessions,* No. 17 CV 02493 (D.Colo.), Complaint at Dkt., 1, ¶ 83 (same allegations). Hoover reports that he has undergone periodic reviews consistent with the Step Down process. *See* ADX Inspection Report, at 13.

Inspection Report, at 13, and no one spoke of an appeal. The reasons for each denial were brief and often unclear or obscure. *Id.*, at 13. This is not inconsistent with a prisoner-authored article who described advancement in the program as "arbitrary" and consistent only with the political or personal purposes of the institution. *Solitarywatch.org/trouble-coming-every-day-adx-the-first-year/*.

With respect to whether an appeal procedure exists, we can only refer the Court to the 2008 ADX Admission and Orientation Handbook, attached as Exhibit 8 to Defendant's Reply Memorandum in Support of First Step Act Motion, Dkt. 1264-8, at 7, which addresses administrative review generally. The Handbook states that an aggrieved prisoner may file with the Warden for an Institutional Administrative Remedy (a "BP-9") within 20 days.[3] If the response is unacceptable, he may file for a Regional Administrative Remedy (a "BP-10") with the Regional Director within 20 days of the Warden's decision. If the BP-10 response is unacceptable, the prisoner may file for a Central Administrative Remedy (a "BP-11") directed to General Council. It is unclear, however, whether the Administrative Review Remedy applies, or would be effective, when it comes to the denial of entry (or advancement) into the Step Down Program.

Defendant respectfully submits that the answer to that question here is irrelevant. The issue before the Court relates to whether Hoover is eligible for

---

[3] The BOP website includes a link to the 2008 Handbook. *See https://www.bop.gov/locations/institutions/flm/* (last visited August 28, 2020).

4

and should be granted First Step Act relief, not whether he chose not to administratively contest a transfer decision that occurred prior to the First Step and Fair Sentencing Acts being applied to prisoners in his circumstances. In Defendant's view the motion should be granted on its merits, regardless of the transitional operations of the Federal Bureau of Prisons.

## The Court Should Grant Defendant's Motion

Larry Hoover was detained in federal custody in 1995. Dkt. #10. He has therefore been incarcerated in this case for twenty-five (25) years. If the Court grants him First Step Act relief and it accelerates his release from federal custody he will be transferred to the custody of the Illinois Department of Corrections ("IDOC") to serve his remaining, and substantial, state sentences. The responsibility will rest with IDOC to determine where Hoover should be housed.

This Court recently granted First Step Act motions for the defendants in *United States v. Jackson,* (95 CR 508-6) (ECF #1225) and *United States v. Strawhorn* (95 CR 508-7) (ECF #1293), two co-defendants who also suffered Continuing Criminal Enterprise ("CCE") convictions. Upon re-sentencing their CCE and other life sentences became 20 years. Hoover's sentences should be the same, with the remaining drug sentences to run concurrent, the one exception being a mandatory five-year consecutive sentence for Count 40.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendant's prior memoranda, Defendant requests that the Court enter an order re-sentencing

5

him to time served. Alternatively, Defendant requests that the Court conduct a new sentencing hearing consistent with the retrospective changes in the Fair Sentencing and First Step Acts.

                                              Respectfully submitted,

                               By:    /s/ Barry A. Spevack
                                        Barry A. Spevack

Michael D. Monico
mm@monicolaw.com
Barry A. Spevack
bspevack@monicolaw.com
MONICO & SPEVACK
53 West Jackson Street
Suite 1350
Chicago, IL 60604
312-782-8500

Justin A. Moore, ESQ.
justin@moorejustice.com
LAW OFFICE OF JUSTIN A. MOORE
1910 Pacific Avenue
#8000
Dallas, TX 75201
(P) 214-794-1069
(F) 972-228-8812

    Attorneys for Defendant

## AFFIDAVIT OF SERVICE

    Barry A. Spevack, an attorney, states that all parties are registered in the Court's ECF Filing System and are therefore being served on the date of filing, August 26, 2020.

                                              /s/ Barry A. Spevack
                                              Barry A. Spevack