# Exhibit M



## OFFICE OF THE STATE'S ATTORNEY
### COOK COUNTY, ILLINOIS

**KIMBERLY M. FOXX**
STATE'S ATTORNEY

**CRIMINAL PROSECUTIONS BUREAU**
2650 SOUTH CALIFORNIA AVENUE
CHICAGO, ILLINOIS 60608

December 6, 2017

Prisoner Review Board
State of Illinois
319 East Madison Street
Suite A
Springfield, Illinois 62701

Re:       Subject:    **HOOVER, Larry**  C-01829 – DIXON (parent institution)

               Sentence:    Murder (150-200 Yrs.)  12-10-73

               Indictment:  **73-1273**

               Docket:      DECEMBER 2017

Dear Members:

Kimberly M. Foxx State's Attorney of Cook County opposes the granting of parole to the above-named inmate for the following reasons:

**Factual background:**

On February 26, 1973, just after 8:00 p.m., a witness heard a car stop in the alley behind 6815 S. Union in Chicago, Illinois. The witness heard three or four shots fired and the car pull away. The witness saw a body lying in the alley and called the police. Upon arrival at the alley police officers observed the body of 25-year-old William "Pookey" Young, face down and in a pool of blood. He had sustained one gunshot wound to the right of the bridge of his nose, one gunshot wound to the center of the back of his head and two gunshot wounds to the upper inside of his right arm. A .38 caliber revolver loaded with five live rounds was recovered near his body and still in the holster. Drug paraphernalia was also recovered from the victim.

During the course of their investigation into Young's death, police officers located and notified members of the victim's family and discovered that inmate Larry Hoover and his associates had been looking for William Young because Young robbed one of Hoover's drug spots and for this Hoover wanted Young killed.

At the time, Larry Hoover was a notorious street gang leader known to his gang as "King Hoover." His gang was referred to as "the Family." "The Family" sold narcotics in the Englewood area of Chicago.

According trial testimony from Larry Leverston, on February 21, 1973, Leverston was present at a meeting of about ten members of the Family. Hoover and his co-defendant Andrew "Dee-Dee" Howard were also present at this meeting. Hoover ordered the execution of William Young, Joshua Shaw and Tony Tucker because they had robbed one of Hoover's dope houses. At a subsequent meeting on February 26, 1973, Hoover stated that "he had gotten one of the guys that they was [was] after and he wanted the other two, Josh Shaw, Tony Tucker killed before the week was out." Hoover further stated "they had gotten 'Pookey' (William Young) and threw him in the alley around 68th and Lowe and shot him in the head." Andrew "Dee-Dee" Howard describing how Young was killed, told Leverston that they had received a call alerting them that Young was seen at Kennedy-King College. Howard and Culver "Rusty" West went to that location and found William Young. They also called Hoover with that information and he too drove to that location. Hoover, Howard and West put Young in their car and then dumped his body in the alley. Leverston did not know if Hoover and his accomplices shot Young in the car or in the alley.

On February 28, 1973, Joshua Shaw, one of the other men wanted dead by Larry Hoover, was shot six times in the head and upper torso and he survived. During an interview with police officers, Shaw said that he was shot on the orders of inmate Hoover because Hoover thought Shaw stole heroin and money from one of Hoover's dope houses. Shaw further told police that he knew Hoover had a contract out on his life and the lives of William Young and Tony Tucker. Shaw told police that he saw William Young in the company of Hoover, Howard and West on February 26th in the area of 69th Street and Wentworth Avenue. He observed Young enter a car with Howard and West with Hoover following in his own car. After his release from the hospital, Joshua Shaw testified to these events at a preliminary hearing in the case against Andrew Howard pending in the Circuit Court of Cook County. After giving such testimony and just prior to the murder trials of Larry Hoover and Andrew Howard, Josh Shaw was found dead in an alley with two gunshot wounds to the back of his head. Tony Tucker has not been seen since February 23, 1973.

On March 15, 1973, at 5:00 a.m. police acting on an anonymous tip went to the Roberts Motel and located Andrew Howard and placed him under arrest for the murder of William Young. Arrest warrants were issued for Larry Hoover and Culver West. On September 21, 1973 at 5:30 a.m., officers stopped the driver of a Hertz Rent-a-Truck for a traffic violation. They asked the driver to produce his license, which he could not. The driver, who identified himself as "Larry Cooper" was asked to accompany the officers into the 6th district police station. While the

2

officers followed the driver he turned off his headlights and sped away. A chase ensued. The squad car and truck were involved in an accident and the driver fled the car on foot. He was caught and placed under arrest. The officers later learned that the truck had been reported stolen. The officers learned that the driver's fingerprints matched Larry Hoover, who had an active murder warrant at the time. Hoover was arrested and charged with the murder of William Young.

Hoover and his co-offender Andrew Howard elected to be tried jointly by a jury. The jury returned guilty verdicts as to both. Judge Frank Wilson sentenced each to 150 to 200 years in prison for the murder of William Young. Hoover appealed and the Appellate Court affirmed his conviction. People v. Hoover, 35 Ill App. 3d 799, 342 N.E.2d 795 (1st Dist. 1976.) A post-conviction petition was dismissed on March 31, 1981. In 1990, the trial court dismissed a subsequent post-conviction petition and the Appellate Court affirmed the dismissal. People v. Hoover, No. 1-90-0507 (1991) (unpublished order under Supreme Court Rule 23.)

Prior to his murder conviction, Hoover had been arrested more than thirteen times. Subsequent to his murder conviction, Hoover was indicted by the U. S. Attorney's Office and prosecuted in Federal Court. He was charged in Case No. 95-CR-508 with charges of continuing criminal enterprise and narcotics conspiracy. Along with Hoover, 48 leaders of his gang, the Gangster Disciples, were also charged and convicted. In that case, Hoover's conversations with his visitors, who were also members of the Gangster Disciple street gang, were secretly recorded. Those recordings indicated that Hoover ran the 35,000-member Gangster Disciples street gang from his prison cell in the Illinois Department of Corrections for over two decades. The tapes of Hoover's conversations were conclusive evidence that Hoover orchestrated the gang's narcotics distribution and money laundering activities. Hoover further encouraged his confidants to use violence to enforce a "street tax" on gang members and independent drug dealers. Hoover was convicted in federal court and sentenced to life in prison without parole.


**Basis for Objection**

Illinois law instructs that the Prisoner Review Board shall not parole a person eligible for parole if it determines that (1) there is a substantial risk that he or she will not conform to the reasonable conditions of parole or aftercare release; or (2) his or her release at that time would deprecate the seriousness of his or her offense or promote disrespect for the law; or (3) his or her release would have a substantially adverse effect on institutional discipline.

To parole this inmate would deprecate the seriousness of the offense and promote disrespect for the law. Hoover, the principal member of a street gang, coldly ordered and implemented the execution of several men for encroaching on his illegal drug and gang business. Under today's sentencing laws, Hoover would be sentenced to mandatory natural life in prison for his crime since as the leader of the Gangster Disciples he was the principal administrator, organizer or leader of a calculated criminal drug conspiracy and caused the intentional killing of the victim. See, 720 ILCS 5/9-1, 730 ILCS 5/8-1(b). This was further reflected in his federal conviction.

3

This Board should honor the trial court's intent when the court imposed such a lengthy sentence and require him to remain in custody.

Moreover, paroling this inmate would have an adverse effect on institutional discipline. While incarcerated Hoover maintained control over the illegal narcotic and gang operations of Gangster Disciple street gang and was later convicted in Federal court of continuing criminal enterprise and narcotics conspiracy. Clearly, he should not be rewarded for his criminal conduct while within IDOC with a release from prison.

In addition, pursuant to 730 ILCS 5/3-3-5(e), if it is not reasonable to expect that an inmate would be granted parole then the next parole hearing can be continued for five years. Since this inmate is simultaneously serving natural life in a federal penitentiary and there is no indication that he is rehabilitated or deserving of parole, we request that this inmate's next parole hearing be continued for five years.

For the foregoing reasons, the State's Attorney of Cook County opposes the grant of parole to Larry Hoover, and respectfully requests, pursuant to 730 ILCS 5/3-3-4(g)(West 2006), that the board also consider all prior recorded statements of protest by any other interested party, including but not limited to the victim's family, in making its decision.

Very truly yours,

Kimberly M. Foxx
State's Attorney

Kathleen Hill
Director of Policy

Margaret A. Hillmann
Assistant State's Attorney

4



## OFFICE OF THE STATE'S ATTORNEY
### COOK COUNTY, ILLINOIS

**ANITA ALVAREZ**
STATE'S ATTORNEY

**CRIMINAL PROSECUTIONS BUREAU**
2650 SOUTH CALIFORNIA AVENUE
CHICAGO, ILLINOIS 60608

December 10, 2014

Prisoner Review Board
State of Illinois
319 East Madison Street
Suite A
Springfield, Illinois 62701

| Re: | Subject: | **HOOVER, Larry** C-01829 – DIXON (parent institution) |
| | Sentence: | Murder (150-200 Yrs.) 12-10-73 |
| | Indictment: | **73-1273** |
| | Docket: | NOVEMBER 2014 |

Dear Members:

Anita Alvarez, State's Attorney of Cook County opposes the granting of parole to the above-named inmate for the following reasons:

On **February 26, 1973**, just after 8:00 p.m., a witness heard a car stop in the alley behind his apartment. The witness heard three or four shots fired and the car pull away. The witness saw a body lying in the alley and called the police. Upon arrival at the alley behind 6815 S. Union in Chicago, police officers observed the bullet-ridden body of 25-year-old **William "Pookey" Young**. His body was face down and in a pool of blood. He had sustained one gunshot wound just to the right of the bridge of his nose, one gunshot wound to the center of the back of his head and two gunshot wounds to the upper inside of his right arm. A .38 caliber revolver loaded with five live rounds was recovered near his body and still in the holster. Drug paraphernalia was also recovered from the victim. William Young's body was transported to St. Bernard's Hospital. Dr. Pimental pronounced the victim dead and his body was transported to the Cook County morgue.

During the course of their investigation, police officers located and notified members of the victim's family and discovered that inmate Larry Hoover and his associates were looking for William Young. Young and others had presumably robbed one of Hoover's drug spots and for this Hoover wanted Young killed.

At the time, Larry Hoover was a notorious street gang leader known to his gang as **"King Hoover."** His gang was referred to as "the Family." "The Family" sold narcotics in the Englewood area of Chicago.

According to Larry Leverston's trial testimony, on **February 21, 1973**, he was present at a meeting of about ten members of the Family. Hoover and his co-defendant Andrew "Dee-Dee" Howard were also present at this meeting. Inmate Hoover ordered the execution of William Young, Joel Ford, Joshua Shaw and Tony Tucker because they had robbed one of Hoover's dope houses. At a subsequent meeting on **February 26, 1973**, inmate Hoover stated that "he had gotten one of the guys that they was [was] after and he wanted the other two, Josh Shaw, Tony Tucker killed before the week was out." Inmate Hoover further stated "they had gotten Pookey (William Young) and threw him in the alley around 68th and Lowe and shot him in the head." Andrew "Dee-Dee" Howard told Leverston that they had received a call alerting them that William Young was seen at Kennedy-King College. Co-offender Howard and Culver "Rusty" West went to that location and found William Young. They also called inmate Hoover with that information and he too drove to that location. Hoover, Howard and West put William Young in their car and then dumped his body in the alley. Leverston did not know if Hoover and his accomplices shot Young in the car or in the alley.

On **February 28, 1973**, Joshua Shaw, another man wanted dead by Larry Hoover, was shot six times in the head and upper torso and fortunately survived. He was taken to St. Bernard's Hospital for treatment. There he was interviewed by police officers. Shaw informed officers that he was shot on the orders of inmate Hoover because Hoover thought Shaw stole heroin and money from one of Hoover's dope houses. Shaw further told police that he knew Hoover had a contract out on his life and the lives of William Young and Tony Tucker. Shaw told police that he saw William Young in the company of Hoover, Howard and West on February 26th in the area of 69th Street and Wentworth Avenue. He observed Young enter a car with Howard and West with Hoover following in his own car. After his release from the hospital, Joshua Shaw testified to these events at a preliminary hearing in the case against Andrew Howard pending in the Circuit Court of Cook County. After giving such testimony and just prior to the murder trials of Larry Hoover and Andrew Howard, Josh Shaw was found dead in an alley with two gunshot wounds to the back of his head. Unfortunately, Tony Tucker has not been seen since February 23, 1973.

On **March 15, 1973,** at 5:00 a.m. police acting on an anonymous tip went to the Roberts Motel and located Andrew Howard and placed him under arrest for the murder of William Young. Arrests warrants were issued for inmate Larry Hoover and Culver West. On **September 21,**

**1973** at 5:30 a.m., officers stopped the driver of a Hertz Rent-a-Truck for a traffic violation. They asked the driver to produce his license, which he could not. The driver, who identified himself as "Larry Cooper" was asked to accompany the officers into the 6th district police station. While the officers followed the driver he turned off his headlights and sped away. A chase ensued. The squad car and truck were involved in an accident and the driver fled the car on foot. He was caught and placed under arrest. The officers later learned that the truck had been reported stolen. Moreover, after the driver's fingerprints were taken and returned, it was learned that his real identity was Larry Hoover and that he had an active murder warrant. The inmate was arrested and charged with the murder of William Young.

Inmate Hoover and his co-offender Andrew Howard elected to be tried jointly by a jury. The jury returned guilty verdicts as to both inmate and co-offender Howard. Judge Frank Wilson sentenced each inmate to 150 to 200 years in prison for the murder of William Young. The inmate appealed. The Appellate Court affirmed his conviction. People v. Hoover, 35 Ill App. 3d 799, 342 N.E.2d 795 (1st Dist. 1976.) The inmate filed a petition for post-conviction relief in 1980. This petition was dismissed on March 31, 1981. There is no record that the inmate appealed. Six years later on July 31, 1987, the inmate filed a second petition for post-conviction relief. The trial court heard arguments on the motion to dismiss the petition and then dismissed the petition on January 22, 1990. The inmate appealed. The Appellate Court affirmed. People v. Hoover, No. 1-90-0507 (1991) (unpublished order under Supreme Court Rule 23.)

Prior to his murder conviction, inmate Hoover had been arrested more than thirteen times. Subsequent to his murder conviction, Hoover was indicted by the U. S. Attorney's Office and prosecuted in Federal Court. He was charged in **Case No. 95-CR-508** with charges of continuing criminal enterprise and narcotics conspiracy. Along with Hoover, 48 leaders of his gang, the Gangster Disciples were also charged and convicted. In that case, inmate Hoover's conversations with his visitors, who were also members of the Gangster Disciple street gang, were secretly recorded. Hoover ran the 35,000-member Gangster Disciples street gang from his prison cell in the Illinois Department of Corrections for over two decades. The tapes of Hoover's conversations were conclusive evidence that Hoover orchestrated the gang's narcotics distribution and money laundering activities. Hoover further encouraged his confidants to use violence to enforce a "street tax" on gang members and independent drug dealers. Hoover was convicted in federal court and sentenced to life in prison without parole. Hoover was also overheard on the tapes bragging about his efforts to deceive the Prison Review Board by claiming he was reformed.

According to the inmate's Disciplinary Card, Hoover was transferred out of the Illinois Department of Corrections on September 30, 1994. He is currently in Federal custody housed in Florence, Colorado. This Board interviewed the inmate via a phone conference on November 9, 2005. The inmate generally did not dispute the facts of this crime. A review of his 2005 En Banc Minute Sheet offers no indication of the inmate's behavior or accomplishments while incarcerated. It was noted that he is serving six life sentences in the Federal system. The 2008 En Banc Minute Sheet indicates that the inmate refused his hearing and signed a waiver. In 2012 the inmate was interviewed via a phone conference. At that time, he admitted ordering the

murder of William Young but denied personally doing the shooting. When asked why he ordered Young killed, Hoover refused to answer. Hoover denied killing or ordering the murder of Shaw and added that Shaw lived a risky life due to his narcotics involvement. He further admitted being one of the principal organizers in the creation of the street gang but denied any current participation. Hoover was scheduled to be interviewed by this Board for parole consideration on November 13, 2014. It is unknown at this time if Hoover participated in this interview and if so, what he had to say. In complete review of this case, there is nothing to indicate that Hoover should ever be paroled.

To parole this inmate would deprecate the seriousness of the offense and promote disrespect for the law. He coldly executed a man for encroaching on his illegal drug and gang business. Moreover, paroling this inmate would have an adverse effect on institutional discipline. He was convicted of running the Gangster Disciple street gang from within the prison walls. Clearly, he should not be rewarded for this abhorrent conduct with a release from prison.

As the Prisoner Review Board is well aware, under today's sentencing laws, this inmate would be sentenced to mandatory natural life in prison for his crime since as the leader of the Gangster Disciples he was the principal administrator, organizer or leader of a calculated criminal drug conspiracy and caused the intentional killing of the victim. See, 720 ILCS 5/9-1, 730 ILCS 5/8-1(b).

In addition, pursuant to 730 ILCS 5/3-3-5(e), if it is not reasonable to expect that an inmate would be granted parole then the next parole hearing can be continued for five years. Since this inmate is simultaneously serving natural life in a federal penitentiary and there is no indication that he is rehabilitated or deserving of parole, we request that this inmate's next parole hearing be continued for **five years**.

Finally, we ask, pursuant to 730 ILCS 5/3-3-4(g), that the board also consider all prior letters and petitions protesting parole for this inmate as well as all prior recorded statements of protest by our office or any other interested party, including but not limited to the victim's family.

Parole is a matter of grace and not a legal right. A convict has no right to be discharged before the expiration of the maximum term of his sentence. Pardo v. Chrans, 174 Ill. App. 3d 549, 124 Ill. Dec. 180 (4th Dist. 1988) "King Hoover" as inmate Larry Hoover is so fondly referred to by his loyal followers and minions, has not only earned his murder sentence but because of his enterprising activities while incarcerated, he has earned himself a life sentence behind bars. There is no place for Larry Hoover in civilized society. No community wants him released so that he is able to contaminate another generation of children with his poison. In 1973, he exercised his street power and had at least one man who dared to encroach upon his business was murdered. He conducted street business with no qualms over killing to send a message. Now a message has been sent to inmate Hoover. Judge Wilson was clear when he sentenced him to 150 to 200 years in prison. The Federal Court was even clearer in explicitly sentencing him to LIFE. This inmate is where he belongs. Parole is not a viable option for Larry Hoover. This inmate deserves no mercy from the Prisoner Review Board. Please do not grant parole to this inmate.

Very truly yours,

Anita Alvarez
State's Attorney


Joe Magats
Deputy Chief, Criminal Prosecutions Bureau


Gina M. Savini
Assistant State's Attorney


Cathleen DeWald
Assistant State's Attorney