UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LARRY HOOVER | No. 95 CR 508<br><br>Hon. John Robert Blakey |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MOTION TO DISQUALIFY**

The UNITED STATES OF AMERICA, through its attorney MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant Larry Hoover's motion to disqualify. Dkt. 1444. Pursuant to *United States v. Barr*, 960 F.3d 906, 922 (7th Cir. 2020), the government does not take a position on defendant's motion. Nevertheless, the government submits this response to correct factual inaccuracies and unsupported suggestions in defendant's motion.

**BACKGROUND**

Defendant is currently serving three concurrent life sentences after being convicted of 40 counts of conviction at a jury trial in 1997. In June 1998, defendant was sentenced to mandatory life imprisonment on Count 2, which charged him with engaging in a continuing criminal enterprise for 25 years—from approximately 1970 until 1995. The Court imposed concurrent sentences ranging from 4 years' to life imprisonment on the remaining counts of conviction, plus a mandatory consecutive sentence of 5 years for Hoover's conviction under 18 U.S.C. § 924(c). Dkt. 451.

1

On December 21, 2019, defendant filed a motion for resentencing under the First Step Act. Dkt. 1232. After holding oral argument and requesting supplemental briefing, on July 6, 2021, the Honorable Harry D. Leinenweber denied defendant's motion. Dkt. 1327. On July 6, 2022, defendant moved for reconsideration. Dkt. 1376. In June of 2024, the case was reassigned to this Court. Dkt. 1412. On September 26, 2024, the Court held oral argument on defendant's motion for reconsideration. Dkt. 1441.

At the hearing, the government opposed defendant's motion. During its argument, the government highlighted the nature of the Gangster Disciples and defendant's leadership of the street gang. In particular, the government observed that, under defendant's leadership, the Gangster Disciples was a violent organization that had an insidious effect on tens of thousands of Chicago-area families through distribution of narcotics trafficking and murder. Tr. 35:22–36:2.[1]

During defense counsel's response, the Court referred back to the government's argument, specifically noting that one of the government's "key arguments" was that defendant "decimated and destroyed tens of thousands of lives with violence, addiction, and murder." Tr. 50:7–13. The Court asked defense counsel to respond to that estimate, asking, "[a]s an officer of the court and based on your own review . . . and the assessment of the sentencing record, given his – your client's proven leadership role in the gang . . . how many murders do you think he is responsible for?" Tr. 50:14–17. The Court later stated, "the government is relying on it. And I'm giving

---

[1] References to the transcript are to the hearing held on September 26, 2024.

2

you an opportunity to respond to it. The Court has to assess what his original crime was, and that's a big part of it. And I'm – I'm asking you – because you're familiar with the record as well." Tr. 51:9–15.

Defense counsel did not address the Court's question. The Court again explained that it was attempting to elicit defense counsel's response to the government's argument so that the Court could properly weigh the 3553(a) factors. The Court stated:

> You tell me because you're trying to tell me how to weigh the factors. So, I'm asking you. Show me how to weigh the factors. How do I weigh the weight of his leadership role when you're telling me there's no way to count the number of people he's -- the murders he's responsible for? So, I'm asking -- this is the last time I'll ask, and you can answer the question or you can avoid it, but I'm going to ask you a question the third time. In your review, as an officer of the court, how many murders is he responsible for?

Tr. 52:1–11. Defense counsel did not answer the Court's question. The Court did not make any factual or legal findings or rule on defendant's motion for reconsideration, and set a further briefing schedule.

Following the hearing, defendant filed a motion to disqualify. Dkt. 1444.

## ARGUMENT

### I. The Court Made No Findings About Uncharged Murders

During oral argument on September 26, the government opposed defendant's motion for compassionate release primarily due to defendant's leadership of the Gangster Disciples. In doing so, the government highlighted the real effect of defendant's operation of the Gangster Disciples—the thousands of people and

3

families impacted by drug addiction, violence, and murder propagated by defendant and his gang associates. During defense counsel's argument, the Court asked defense counsel to address the government's estimate, and defense counsel refused. Defendant now claims that this colloquy reflects the Court's bias, because, in his view, the Court's question "assumed that defendant had committed uncharged murders," and the Court "conclude[d] that Defendant was responsible for uncharged murders." *See* Dkt. 1444 at 8 ¶¶ 26–27. Defendant's argument misstates the record.

First, the Court did not make any findings or conclusions about defendant's motion. The Court took defendant's motion for reconsideration under advisement and invited the parties to file supplemental briefs by October 7. *See* Dkt. 1441 (taking motion under advisement). In fact, the Court made it clear from the beginning of the September 26 hearing that it would not decide the motion that day, but would allow the parties to "respond in writing to anything that you want." Tr. 4:10–18; *see also* Tr. 33:12–16 (reiterating invitation for parties to file supplemental briefs by October 7); Tr. 42:23–25 (same); Tr. 53:17–21 (same). The Court made no factual or legal findings. Rather, the Court heard argument, asked a few questions, and adjourned pending further written submissions. (Defendant filed only his disqualification motion, not any substantive supplemental brief.)

The Court's questions drew no conclusions, as defendant suggests. Rather, the Court engaged in a colloquy to give defense counsel the opportunity to rebut the government's assertion that defendant's gang activities, including drug distribution and murder, had destroyed tens of thousands of lives. The Court repeatedly made

4

clear that it was not crediting the government's argument, but was giving defense counsel the opportunity to respond. For example, the Court noted that it was one of the government's "key arguments," (Tr. 50:7–13), stated that, "the government is relying on it. And I'm giving you an opportunity to respond to it," (Tr. 51:9–15), and stated, "Show me how to weigh the factors. How do I weigh the weight of his leadership role when you're telling me there's no way to count the number of people he's -- the murders he's responsible for?" (Tr. 52:1–11). The Court did not make any conclusions or show bias against defendant—it simply invited a response to one of the government's main arguments.[2]

The Court's inquiry was wholly appropriate. A district court deciding a First Step Act motion bears the "standard obligation to explain their decisions and demonstrate that they considered the parties' arguments." *United States v. Newbern*, 51 F.4th 230, 231 (7th Cir. 2022) (quoting *Concepcion v. United States*, 597 U.S. (2022)). The Court was following its obligation to thoroughly consider and evaluate the government and defense counsel's arguments on a key issue relating to the Gangster Disciples' violence in the Chicago area and what conduct defendant should be held accountable for.

Contrary to defendant's suggestion, the Court's words did not evince "an intent to rely on extra-judicial sources in deciding the motion." Dkt. 1444 at 4 ¶ 15. Rather, far from relying on extra-judicial sources, the Court repeatedly referred to the sentencing record in asking counsel how many murders were attributable to

---

[2] The government's argument was wholly appropriate, given that defendant has already been convicted of ordering a gang-related murder. *See* Dkt. 1386 at 5.

defendant. *See* Tr. 50:14–16 (asking counsel how many murders defendant was responsible for "based on your own … *assessment of the sentencing record*"); Tr. 51:9–15 ("I'm asking you – because you're familiar with *the record* as well."); Tr. 52:10–11 ("*In your review*, as an officer of the court, how many murders is he responsible for?"). The sentencing record is replete with references to defendant's involvement in murders beyond the double murder for which he was incarcerated in state court. For example, contrary to defendant's claim that the PSR "does not reference any uncharged murders," (Dkt. 1444 ¶ 16), in fact, the PSR makes multiple references to uncharged murders. For example, the PSR stated that the rules of the gang were enforced by "violent beatings which sometimes rendered their victims hospitalized or killed," and noted that gang members were forbidden from talking to law enforcement "under penalty of death." PSR ¶ 17. It was therefore entirely appropriate for the Court to ask defense counsel, based on her review of a sentencing record that makes references to other murders, how the Court should consider defendant's role in those murders.

## II. Counsel's Argument Regarding the Court's Choice of Language is Frivolous

Defendant also takes issue with the Court's innocuous and accurate reference to defense counsel as "an officer of the court." Dkt. 1444 ¶ 14. But there is nothing insulting or even controversial about this phrase, which appropriately reflects attorneys' role when they appear in court. Indeed, it is well-settled that lawyers who practice in federal court are considered "officers of the court." "Lawyers enter the courtroom as officers of the court with professionally bestowed levels of credibility

6

and discretion and thus occupy a position of public trust." *United States v. Kowalski*, 103 F.4th 1273, 1279 (7th Cir. 2024); *see BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002) ("As officers of the court, lawyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress; it is precisely to impose a duty of assistance on the bar that lawyers are called 'officers of the court.'"); *see also Theodore v. New Hampshire*, 614 F.2d 817, 822 (1st Cir. 1980) ("Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations.").

Contrary to defendant's suggestion, the title is not an insult—it is a compliment. By emphasizing that defense counsel was (and is) an officer of the court, the Court was not suggesting that it was biased against defendant. Quite the opposite. The Court was emphasizing that it would rely on and take seriously the answer counsel gave as an officer of the court, a title that comes with "professionally bestowed levels of credibility and discretion." *Kowalski*, 103 F.4th at 1279. There can be no bias in pointing out a fact that is simply true. Defendant's attempt to read something into this phrase that does not exist should be rejected.

### III. The Court Appropriately Inquired About Post-Sentencing Conduct

As noted, during the hearing, the Court inquired about the number of murders defendant was responsible for. Defendant claims that such an inquiry reflects the Court's bias, because, in his view, the Court indicated it "believes it can and should consider as aggravating evidence any and all harm that can be attributed to the GD street gang, even *after* Defendant was convicted." Dkt. 1444 ¶ 13. Again, the Court did not state that it would rely on any particular evidence, including violent acts and

7

narcotics trafficking by the Gangster Disciples after defendant's incarceration. Indeed, the Court was merely fulfilling its obligation to consider all relevant evidence in ruling on defendant's motion. To that end, and contrary to defendant's argument, a Court considering a motion for sentencing reduction under the First Step Act may consider post-sentencing conduct. *Concepcion v. United States*, 597 U.S. 481, 498–99 (2022) ("[W]hen deciding whether to grant First Step Act motions and in deciding how much to reduce sentences, courts have looked to post-sentencing evidence of violence or prison infractions as probative."); *Newbern*, 51 F.4th at 232 (noting that *Concepcion* "emphasized district courts' discretion to consider any information relevant to the sentencing factors enumerated in 18 U.S.C. § 3553(a)," including "a defendant's conduct in prison"). Such an inquiry is logical, as defendant is asking to have his sentence reduced, and the Court needs to make an assessment, *inter alia*, as to whether defendant remains a danger to the community. Post-sentencing conduct is part of that inquiry.

In this case, where defendant has a history of leading the Gangster Disciples even while incarcerated, it is entirely appropriate for the Court to consider his conduct during his incarceration at ADX Florence as one of the § 3553(a) factors. Indeed, for the reasons detailed in the government's response to defendant's motion to reconsider, defendant's leadership of the GDs has continued during his incarceration. *See* Dkt. 1386 at 22–27. The Court showed no actual or perceived bias in asking counsel about conduct that occurred post-sentencing, particularly where the government emphasized that conduct in its argument and such conduct is

8

relevant to the Court's ruling on defendant's motion. The Court merely asked defense counsel to respond to the government's arguments. And defendant's argument is a substantive legal argument about what the Court should consider, not a reason for disqualification.

## Conclusion

As set forth above, the government takes no position on defendant's motion to disqualify. Dkt. 1444.

Date: November 26, 2024  Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: */s/ Megan DeMarco*
Julia K. Schwartz
Megan DeMarco
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300