

**FILED**
4/11/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

Case No. 1:95-cr-00508

UNITED STATES OF AMERICA

v.

LARRY HOOVER,

    Defendant.

_____/

## AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT LARRY HOOVER

TO THE HONORABLE COURT:

Comes now the Amicus Curiae, respectfully submitting this brief to address significant concerns regarding the prolonged sealing of court records in this matter, as well as due process and ethical violations apparent in one of the only available public filings related to Defendant Mr. Larry Hoover. This brief does not seek to relitigate substantive issues but instead urges the Court to examine procedural and constitutional deficiencies that carry implications far beyond this individual case.



# TABLE OF CONTENTS

- Amicus Curiae Brief .................................................................................. 3

  - I. Sealed Docket Entries and Violations of Transparency Norms ................... 3
  - II. The Government's Representations in Opposition to First Step Act .......... 5
  - III. Government's Evidentiary Claims and the BOP Incident Report .............. 6
  - IV. The Court's Inherent Responsibility to Correct the Record....................8
  - IV. Conclusion ............................................................................................ 9

# TABLE OF AUTHORITIES

### Cases

- *Coffin v. United States*, 156 U.S. 432 (1895) ............................................................. 5
- *Wolff v. McDonnell*, 418 U.S. 539 (1974) .................................................................. 8

### Statutes and Rules

- Federal Rule of Criminal Procedure 49.1 .................................................................. 3
- Federal Rule of Civil Procedure 11 ............................................................................ 5
- 18 U.S.C. § 3582(c)(1)(A) ......................................................................................... 8

### Ethical Rules

- ABA Model Rule of Professional Conduct 3.3 (Candor Toward the Tribunal) .......... 5
- ABA Model Rule of Professional Conduct 4.1 (Truthfulness in Statements to Others) ................................................................................................................... 5
- ABA Model Rule of Professional Conduct 8.4(c) (Misrepresentation) ...................... 5

### Local Rules

- Local Rule 26.2(h), N.D. Ill. ...................................................................................... 3

## I. SEALED DOCKET ENTRIES AND VIOLATIONS OF TRANSPARENCY NORMS

1. This case was originally filed on August 30, 1995. The docket reflects that it was administratively closed on September 28, 2008.

2. Pursuant to the Local Rules of the Northern District of Illinois, **Rule 26.2(h)**, non-electronically filed sealed materials shall be maintained under seal for **63 days** after final disposition of the case, including any appeals. After this time, parties are notified and given 30 days to retrieve sealed filings before the Clerk is permitted to destroy them.

3. Despite the passage of more than 15 years since the docket was closed, the vast majority of entries remain sealed—contradicting both Local Rule 26.2(h) and the intent of **Federal Rule of Criminal Procedure 49.1**, which promotes public access to judicial records.

4. The first publicly available docket entry that even references Mr. Hoover is Docket Entry 897, dated March 18, 2009—after the case had already been administratively closed.

5. This extended sealing prevents the public and the legal community from analyzing the procedural history of a case that holds extraordinary public interest, effectively obstructing meaningful legal review.

6. Compounding this concern is the fact that the Seventh Circuit Court of Appeals' online filing system remains inaccessible through PACER, further undermining transparency.

7. This dual-layered inaccessibility rises to a potential **constitutional breach**. Amicus Curiae respectfully suggests that, in lieu of seeking immediate Supreme Court intervention, this Court consider whether the full record—including sealed entries from both this District and the Court of Appeals—should be preserved or elevated to a higher judicial authority under its supervisory power.

8. Moreover, the inconsistent recognition of **pro hac vice** admission, combined with the absence of an effective appellate access framework, now implicates **First Amendment concerns**. An emerging body of constitutional analysis suggests that unlicensed legal advocacy—such as jailhouse lawyering, public interest submissions, or whistleblower filings—may constitute protected speech, particularly in matters affecting life, liberty, or systemic injustice.

9. There is no federal "license" to practice law; licensure is governed by the states. Efforts to suppress unlicensed legal assistance in federal proceedings—especially when access to licensed representation is structurally limited—raise serious constitutional questions. The line between unauthorized legal practice and **protected petitioning activity** under the First Amendment must be drawn with caution and care and Amicus urges this court to distinguish the difference.

## II. THE GOVERNMENT'S REPRESENTATIONS IN OPPOSITION TO FIRST STEP ACT RELIEF

10. One of the few publicly accessible filings in this matter is Docket Entry 1310—the Government's opposition to Mr. Hoover's motion for sentence reduction under the First Step Act.

11. Although initially filed under seal, the document was later re-submitted and unsealed pursuant to the Court's sealing rules, making it one of the only substantive entries available for public review.

12. In **Exhibit A** to that filing, the Government relies on an unrelated federal indictment filed just two weeks earlier—an indictment in which Mr. Hoover is not named as a defendant and which remained unadjudicated at the time. Despite this, the Government invokes references to Mr. Hoover made in that indictment by an unidentified prosecutor to suggest his continued influence and gang-related notoriety.

13. This tactic raises grave evidentiary concerns. The use of third-party allegations, not subject to adversarial testing or judicial findings, constitutes impermissible reliance on extrinsic evidence to establish character or propensity in violation of **Federal Rules of Evidence 401, 403, and 404**. It further undermines the constitutional **presumption of innocence**, a principle deeply embedded in American law since *Coffin v. United States*, 156 U.S. 432 (1895), and safeguarded by the **Fifth and Fourteenth Amendments**.

14. The Government's submission fails to identify the author of the referenced indictment, leaving unclear whether the same individual also signed the opposition to Mr. Hoover's motion. Regardless, both documents were submitted under the authority of the Department of Justice, making the agency fully accountable for the representations made therein.

15. The attempt to rely on untested, prejudicial material without disclosure of authorship or evidentiary foundation raises not only due process concerns, but also potential violations of **Federal Rule of Civil Procedure 11(b)** and the **ABA Model Rules of Professional Conduct**, particularly Rule **3.3** (Candor Toward the Tribunal), Rule **4.1** (Truthfulness in Statements to Others), and Rule **8.4(c)** (conduct involving dishonesty, fraud, deceit, or misrepresentation).

## III. GOVERNMENT'S EVIDENTIARY CLAIMS AND THE BOP INCIDENT REPORT

16. **Exhibit B** to the Government's filing includes a Bureau of Prisons (BOP) incident report involving a separate inmate who allegedly possessed coded language concealed in a personal dictionary. The sole basis for linking Mr. Hoover to this alleged message was the fact that he had previously ordered the same commissary item—a dictionary—despite no evidence indicating that Mr. Hoover ever saw, possessed, or interacted with the specific item in question.

5

17. Nevertheless, the BOP imposed sanctions against Mr. Hoover under Code 296: "Use of Mail for Abuses Other Than Criminal Activity." This occurred despite not only the absence of any direct or circumstantial evidence that Mr. Hoover authored, received, or transmitted the alleged communication, but also the disciplinary report itself explicitly acknowledging that Mr. Hoover had no direct involvement.

18. The Disciplinary Hearing Officer (DHO) further conceded that no confidential information was deemed reliable, yet sanctions were imposed regardless. The DHO concluded with a boilerplate assertion: "You and you alone will be held responsible for your behavior at all times"—a statement that not only contradicts the report's evidentiary findings, but also introduces a prejudicial and conclusory tone unsupported by any factual record.

19. The Government has failed to articulate any meaningful connection between this incident and Mr. Hoover. The so-called code analysis consists of just two pages, each marked with arbitrary highlights and a vague word count. Remarkably, both pages are labeled page "1," a detail that calls into question the integrity and sophistication of the alleged covert communication.

20. The Government's position requires the Court—and the public—to accept that another inmate developed an advanced, encrypted message system akin to military-grade codework or historical cryptographers, only to undermine the operation by mislabeling both pages identically. This internal inconsistency severely weakens the Government's theory of a sophisticated clandestine exchange and calls into doubt the credibility of the evidentiary foundation upon which sanctions were based.

21. This tenuous connection, when paired with significant punitive consequences, raises legitimate concerns that Mr. Hoover's access to the mail system—and by extension, his ability to

6

receive legal documents and court-related correspondence—has been strategically curtailed. Such restrictions, when not grounded in reliable evidence or due process, threaten to obstruct a defendant's constitutional right to meaningful legal participation.

22. Even more troubling is the Government's reliance on this same flawed disciplinary incident six years later as part of its justification for denying Mr. Hoover relief under the First Step Act. To recycle an unsubstantiated administrative sanction as the basis for continued incarceration not only contravenes due process principles but may also implicate the **Thirteenth Amendment's prohibition against involuntary servitude**, particularly where ongoing imprisonment is predicated on legally and factually defective proceedings.

23. Finally, the BOP's own internal summary—stating that "Confidential information was used by DHO... determined to be reliable because: N/A"—is legally incoherent and fails to satisfy the minimal procedural safeguards outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). If no foundation is offered for the reliability of confidential information, it cannot lawfully serve as the basis for disciplinary sanctions or as a collateral barrier to statutory sentencing relief.

## IV. THE COURT'S INHERENT RESPONSIBILITY TO CORRECT THE RECORD AND EXERCISE DISCRETION WHERE JUSTICE DEMANDS IT

24. In light of the constitutional deficiencies, evidentiary irregularities, and sealed record concerns outlined above, **Amicus Curiae respectfully urges this Court to revisit its prior denial of First Step Act relief to Mr. Hoover—not by way of procedural motion, but through its own inherent authority and responsibility to correct the record where justice so clearly compels it.**

25. Mr. Hoover is now 74 years old. He has spent over half a century in federal custody under a sentence that predates both the First Step Act and the modern understanding of rehabilitation, restorative justice, and the urgent need to correct structural disparities in sentencing. He was married in January of 2020—yet has never once been able to embrace his wife. His reality is marked not by violence or threat, but by the ongoing erosion of his human dignity under a system that continues to treat speculation as evidence and procedural technicalities as barriers to meaningful review.

26. The First Step Act was passed not only to correct excessive sentences, but to offer hope and accountability—both for individuals and for the institutions responsible for their confinement. It was never intended to be undermined by the kind of speculative and facially defective evidence advanced by the Government here. To deny relief based on a report that the Bureau of Prisons itself admitted relied on no reliable confidential information, while citing unadjudicated third-party allegations from unrelated indictments, falls below the constitutional floor required for continued incarceration.

27. In this context, the burden is not on Mr. Hoover to prove that justice has failed him. It is on the Court to **decide whether it will allow such failure to persist unexamined and uncorrected.** Federal courts possess broad discretion—especially under 18 U.S.C. § 3582(c)(1)(A) and relevant retroactivity provisions of the First Step Act—to impose conditions, including rigorous supervision, community restrictions, or any other monitoring systems deemed necessary to safeguard the public interest. **The question is not whether Mr. Hoover is perfect. The question is whether this Court is prepared to act with moral clarity in the face of a record that has been bent by secrecy, delay, and systemic inequity.**

28. **This case is, and always has been, bigger than one man.** Given the unique cultural, racial, and legal significance of this matter—not just in Chicago, but in the history of federal criminal law—this Court has the rare opportunity to chart a different course. To act here would not be a signal of weakness, but of judicial strength: a kind of constitutional "reverse" to the shot heard around the world. Not the beginning of a war, but the correction of one that never should have been waged in the shadows.

29. **Amicus Curiae does not presume to speak for Mr. Hoover, or for the community most impacted by his story. But in elevating this record, and reconsidering this outcome, the Court has a chance to set precedent—not just in law, but in legacy.**

## V. CONCLUSION

30. The record in this matter reveals more than mere procedural error—it exposes a pattern of institutional opacity, evidentiary misconduct, and constitutional neglect that demands this Court's attention. When decades-old docket entries remain sealed in defiance of local rules, when character allegations are lifted from unrelated and untested indictments, and when a disciplinary sanction admitted to lack reliability becomes the linchpin of ongoing incarceration, the very legitimacy of judicial process is placed at risk.

31. This Court has both the authority and the obligation to restore integrity to that process. Mr. Hoover's continued imprisonment under these circumstances does not reflect a functioning system of justice—it reflects the residue of one long overdue for recalibration. The First Step Act was intended to correct the excesses of the past and restore hope to the promise of rehabilitation. That promise cannot be fulfilled when government opposition is built on innuendo, redactions, and flawed reports.

32. Amicus Curiae submits this brief not to relitigate guilt or innocence, but to advocate for constitutional consistency, evidentiary accountability, and judicial courage. The sealing of this case, the misapplication of disciplinary mechanisms, and the disregard for foundational principles like due process and the presumption of innocence represent not isolated flaws—but compounding failures that only this Court can remedy.

**Accordingly, Amicus urges the Court to:**

- **Review the sealed docket** and unseal materials consistent with Local Rule 26.2(h);
- **Evaluate the Government's filings** to determine whether they meet the constitutional and ethical standards required to justify continued incarceration under the First Step Act;
- **Preserve or transmit the full record** for appellate or supervisory review if transparency and fairness cannot be independently achieved; and
- **Exercise its inherent authority** to reconsider Mr. Hoover's eligibility for relief and, if warranted, impose supervised release conditions that serve both justice and public safety.

**This is a moment not simply for judicial discretion—but for judicial leadership.**

Respectfully submitted,

**Publius**
*Amicus Curiae*

Robert A. Pietz
pietzreceipts@gmail.com
754-277-9578
4229 NE Suwannee Dr
Lee's Summit MO, 64064

April 8, 2025